## PREWITT v. CHAPMAN.

I. An instrument, purporting to be a bill of exchange, which does not direct to whom the money is payable, may be the foundation of a suit, in the name of the person from whom the consideration moved, and to whom it was delivered by the drawer : but an action cannot be, maintained thereon, by a third person, as bearer.

Error to the Circuit Court of Mobile.

This was an action of assumpsit by the defendant in error, as bearer of two bills of exchange against the plaintiff in error, as acceptor of one, and as drawer of the other.

The declaration contains two counts in the usual form, by the plaintiff as bearer, against the defendant as drawer and acceptor, and also the common counts—and upon the general issue, with notice of the set-off; the plaintiff had a verdict.

From a bill of exceptions, it appears that the plaintiff offered in evidence, two instruments of writing, of the following tenor.
Exchange for $2,500.

Aberdeen, Miss. Nov. 24, 1839.

On the first day of March next, without grace, please pay this, my first and only exchange, at the counting room or domicil of Jesse G. Thomas, in the city of Mobile, twenty-five hundred dollars, value received, and charge the same to account of your

Ob't servant,

T. Coopwood.

To Mark Prewitt, Aberdeen, Miss.
Exchange for $1,021 44.

Aberdeen, Miss, Nov. 24, 1839.

On the first Monday of March next, without grace, please pay this, my first and only exchange, at the counting room or domicil of Jesse G. Thomas, in the city of Mobile, one thousand and twenty-one dollars and forty-four cents, value received, and charge the same to account

Of your ob't servant,

Mark Prewitt.

To Col. Abner Prewitt, Athens, Miss.

Which bills were then and there duly accepted, whilst in the possession of one O'Neill.

It was also proved that the bills were presented at maturity at the proper place, and protested at the instance of Tartt, Stewart & Co., for non-payment, of which the defendant had due notice.

The plaintiff then closed his case, and the defendant's counsel moved the court to exclude the evidence, as being insufficient to establish a claim against the defendant, which motion was overruled.

The defendant then introduced testimony, conducing to shew that the bills were given by the drawers to one Patrick O'Neill, in settlement of a judgment of O'Neill against the drawer, Coopwood, and that after the same had been given to O'Neill, he delivered them to the plaintiff and one Houston, to indemnify them as his sureties. The defendant's counsel then moved the court to instruct the jury, that on this evidence the plaintiff could not recover, which the court refused, and charged that the plaintiff was entitled to recover, if the bills were assigned by O'Neill before the commencement of the suit.

CAMPBELL, for the plaintiff in error.—An instrument cannot operate as a bill of exchange, unless the money is on the face of the paper made payable to some one. [Chitty on Bills, last ed. 139, 140, 155, 166; 2 Pardessus, 156; 1 Henry Blackstone, 608–9; Story on Bills, 71; 6 Wendell, 644; 13 Mass. 158; 19 Wendell, 566; 2 Hill, 59, 80.]

That to render an instrument negotiable, it must be intended, from the paper itself, that the person making it, intended to give it a transferable quality. He denied that any such inference could be drawn in this case—that O'Neill, to whom it was delivered, might, by proper averments, recover upon it, but he could not transfer this right to another.

That this case was unlike those cases where a blank was left for the name of the payee, or where the bill was made payable to and endorsed by a fictitious person. That in the first case, an authority might be presumed to fill up the blank; and in the latter, if the instrument could not operate as a bill payable to bearer, it would be void, and those putting it in circulation would profit by their own fraud.

PHILLIPS and DARGAN, *contra.*

The instrument purports to be a bill of exchange : the intent of the parties is apparent upon its face. It is called their bill of exchange, and appears to be for value. The only question is, shall the intent of the parties be carried out? If it is not construed as a bill payable to bearer, then it is waste paper. This would be to destroy the intent of the parties; or, if they intended what their declarations did not warrant, they meditated a fraud, and should not be permitted to reap its fruits.

They insisted, that the question was settled by the case of Gibson v. Minet, [1 H. B. 569,] as no distinction could be drawn between a fictitious payee and no payee ; and that it was impossible to distinguish this case from the case of a blank left for the insertion of a payee. They cited 3 Term, 174; id. 182 ; 1 H. B. 569; 2 id.; 2 Hill's Rep. 59; 3 id. 112; Chitty on Bills' ed. 1839, 218; 1 Stephens' N. P. 570.

ORMOND, J.—The question presented on the record is, whether the instruments, which are the foundation of the action, are negotiable, so as to permit the defendant in error to maintain an action thereon in his own name as bearer.

The instruments are, in all respects, formal bills of exchange, except that no persons are indicated therein as payees.

It is clear, that every bill of exchange should specify to whom it is payable, to enable the acceptor to discharge himself from liability by payment to the proper person ; and, indeed, on · general principles of law, it would be void for uncertainty. [Story on Bills, 68; Chitty on Bills, 177, Am. ed of 1839.] Such is also the law of France, [2 Pardessus, 346.]

It is not denied, that the general rule is as stated ; but it is insisted, that where the intention is apparent, courts will give effect to it; and that the legal intent is, that these bills are payable to bearer. The case of Gibson v. Minet, [1 H. B. 569,] is mainly relied on to support this proposition. It is well known, that the case referred to, was that of a bill drawn payable to, and endorsed in the name of, a fictitious person, the bill having been accepted with knowledge of the fact, and negotiated to one ignorant of these circumstances. The judges who gave effect to the bill against the acceptor, place their judgment on the supposed intention of the parties to it : that, by making it, and giving currency to it, they

must have intended it should be operative and effectual as a bill of exchange; and, as the holder could not derive title through the endorsement of a fictitious person, it must be considered, they intended it should be payable to bearer.

This artificial conclusion was plainly forced on the judges by the necessity of the case, and to prevent the consummation of the fraud. Since the decision of that celebrated case, it has been considered as settled, that an innocent holder of a bill payable to, and endorsed in the name of a fictitious person, may recover on it as on a bill payable to bearer.

It is not, however, necessary that the name of the payee should be inserted when the bill is drawn. If a blank is left for that purpose, it will be considered an authority to the holder to fill it up. [Cruchley v. Clarance, 2 M. & S. 90; Crutchly v. Mann, 5 Taunton, 529.] So it has been held, that when it was intended that the bill should be negotiable, and the words "or order" were omitted by mistake, they might be afterwards inserted, so as to charge an indorsee. [Kershaw v. Cox, 3 Espinasse, 246; Chitty on Bills, 219, ed. 1839.]

It may be then collected, that the intention is to govern; and where that is apparent from the bill itself, or by the proof of extraneous facts, effect will be given to such intention. [See the last reference to Chitty on Bills; also, Douglass v. Wilkerson, 6 Wendell, 644; 2 Hill, 59.]

Now, what evidence is there of an intention that these instruments should have the effect of bills of exchange payable to bearer? It is not shown, that there was any mistake in the draftsman, or that they are not precisely as the parties intended they should be. It is true, the instruments are called bills of exchange by the drawer, and, in their general structure, are like bills of exchange ; and we may, therefore, infer that, as the consideration moved from O'Neill, he was the party intended to be benefitted ; and, doubtless, on the proof made by the defendant, he could recover on the bills, as it cannot be presumed the parties meant to do a nugatory act, and they must therefore, have intended to transfer the right to the money to O'Neill. Does it necessarily follow, that they also intended to transfer this right to any other person who might come to the possession of the paper? Such may have been the intention, but, certainly, it cannot be pre-

sumed, in the absence of all proof of such intention, from the mere fact, that the consideration moved from O'Neill.

The decision in Gibson v. Minet is avowedly founded upon the necessity of the case, and was supposed to be necessary to prevent the consummation of the meditated fraud. There, the holder had no means of knowing that the indorsee was a fictitious person. Here, the bill disclosed on its face that it was not payable to the order of any one, or, generally, to bearer. Every one to whom the bill was offered, was apprised of the predicament in which it stood. There is, therefore, no necessity for the presumption of an intention not authorized by the terms of the instrument to prevent injury to an innocent holder.

Even in the case of a fictitious payee, the presumption of an intention to pay to bearer is not raised, if the holder knew the fact when he took the bill. [Chitty on Bills, 181 ; Hunter v. Jeffrey, Peake's Rep. Add. 146.]

In addition to the view here taken, in 1837, the Legislature passed an act, to be found in Clay's Dig. [326, § 76,] declaring "that all bonds, bills or notes, which shall be made payable to any person or persons, or bearer, or to any corporation or bearer, shall have the effect of creating an obligation or liability in favor of the corporation, or person or persons, only to whom any such bond or note may be expressly made payable ; and no one but such corporation, or such person or persons, or their endorsee or personal representative, shall have a right to maintain, in his own name, an action upon any such bond, bill or note." If, therefore, these bills were expressly made payable to Patrick O'Neill or bearer, this action could not be maintained by the holder as bearer ; but to enable him to maintain this suit in his own name, it would have been incumbent on him to deduce a legal title in himself by endorsement from O'Neill before the action was instituted.

Let the judgment be reversed, and the cause remanded.