## SPRAGUE & WINSTON *vs.* ZUNTS.

1. Where a bill of exchange, accepted by a firm and endorsed in the
name of the payee, is, before its maturity, put in circulation by one
of the partners, his act is to be considered the act of his co-partners,
and estops them, when sued on the bill, from denying the genuine-
ness of the endorsement.

2. In such case, the legal presumption, in the absence of controlling
evidence, is, that the bill has been taken up and discharged by the
acceptors and again put in circulation for their benefit, and as from
this presumption it follows that the bill was of no validity until thus
put in circulation, a holder, who has purchased it from an agent of
the firm, at a discount greater than the legal rate of interest, can only
recover from the acceptors the principal sum paid, notwithstanding
such purchase was made in entire ignorance of the facts.

ERROR to the Circuit Court of Mobile. Tried before the
Hon. John Bragg.

STEWART, for the plaintiffs in error.

CAMPBELL, for the defendant:

1. Brodnax, Newton & Co. were the acceptors of the draft
sued on. Brodnax, one of the acceptors, affirmed the genuine-
ness of the signatures upon it, in delivering it for sale to the
broker. His firm could not contest the signatures of the other
parties. They were estopped by his act.—2 G. & Johns. 296;
2 Bing. N. C., 544; Chitty on Bills, 634; 10 B. & C. 468;
Chitty on Bills, 631, note *n.*, 636 notes. This court in 1 Stew.

354, has decided that the transferer of a note warrants its genuineness.

2. There is nothing to show that the bill was not a complete and valid transaction before the sale by the broker. There was nothing to show that it was for the account of the firm of Brodnax, Newton & Co. The legal presumption is, that the bill was perfect and available when it was made, and if any party desires to get clear of the presumption, the burden rests upon him.—2 Ala. 502.

3. A note made by a firm to a payee, who is a member of the firm, is not extinguished.—9 Port. 446. It is clear that the fact that one partner holds a security of the firm, does not raise a suspicion against it.

4. Before any claim for deduction can be made, it must be shown that the sale of the bill was for the account of the firm, and that the transaction was unavaible, until the sale. There is no impeachment of the transaction by the defendant. The bill is delivered to the broker, complete in all its parts. He sells it to a party ignorant of any defence, and none of the parties show any objection to it. A party having all the means of proof shows none. The charge of the court is clearly correct.—7 Pet. 103.

5. The partnership of Sprague is stated in the bill of exceptions to have been proved. In the bill it is not stated what the business was, but it is shown to have involved purchases of property, business correspondence, the giving of notes, and this bill. The presumption is that an act of a partner, done in the partnership name, is within the scope of its business until the contrary appears. In all the cases it will appear that proof was made of the nature of the partnership by the defendant, who claimed exoneration. This was laid down in 2 Ala. 513.

DARGAN, C. J.—This suit was brought against the plaintiffs in error, as acceptors of a bill of exchange for three thousand dollars, drawn by Wm. T. Stone, in favor of T. W. Brodnax, on the firm of Brodnax, Newton & Co. The bill purported to be endorsed by the payee, and accepted by Brodnax, Newton & Co. Judgment was rendered against Winston by default, but Sprague filed a plea, putting in issue the acceptance of the bill, as well as the drawing and the endorsement thereof by the parties, whose names appeared as drawer and endorser. On the

trial, it was proved that the acceptance was in the hand-writing of Robert Brodnax, one of the firm of Brodnax, Newton & Co., and that Sprague and Winston were members of that firm at the time the bill was accepted. It was also shown that Robert Brodnax, one of the firm, before the maturity of the bill, left it with an exchange broker for sale, with instructions to sell the bill for as much as it would bring, and that the broker sold the bill to the plaintiff for twenty-five hundred and fifty dollars, which sum was paid over to Robert Brodnax. The broker did not disclose to the plaintiff any thing, as he stated, that would affect the genuineness or the validity of the bill. Upon this evidence, Sprague requested the court to charge the jury, that the plaintiff could not recover, which was refused, and the court instructed the jury, that as Robert Brodnax put the bill in circulation in the name of the firm, they thereby affirmed the genuineness of the signatures to the bill, and the firm was bound by it. Sprague also requested the court to charge the jury, that the plaintiff could not recover on the first count, which alleged the endorsement of the bill to the plaintiff, without proof of the signature of the endorser. This charge the court also refused to give, and charged that as the plaintiff obtained the bill by its being put in circulation by one of the members of the firm, the endorsement need not be proved. The court was further requested to charge the jury, that the measure of damages was the amount of money paid by the plaintiff, with interest thereon. This charge was also refused, and the court charged that as there was no plea of usury, nor notice in what way the bill got into circulation, the plaintiff was entitled to recover the amount of the bill with interest thereon. To these several charges and refusals to charge, the defendant Sprague excepted, and they are now assigned for error.

When a plaintiff derives his title to a bill through an endorsement, if the *factum* of the endorsement be put in issue by the pleadings, he must prove the signature of the endorser, but this may be done in several ways, for instance, if the suit be against the acceptor, and he has admitted the genuineness of the endorsement, this admission is evidence against him and sufficiently proves the endorsement.—Chitty on Bills, 635, note *c*; Kelpinger v. Griffith, 2 G. & Johns. 296; Greenl. Ev. vol. 2, § 159. Applying this rule to the evidence introduced in the court below, we think the court correctly held that the signature of the en-

dorser was sufficiently proved. We find the bill in the possession of one of the firm of Brodnax, Newton & Co. after the endorsement made upon it ; he gives it to a broker to be sold, and thus the bill is thrown upon market. This, we think, cannot be considered less than an affirmation that the bill is genuine, and dispenses with any further proof of the signature of the endorser in a suit against the acceptors. Indeed, if the bill was drawn in the name of a fictitious drawer, to the order of a fictitious payee, and the name of such payee endorsed on the bill, the acceptors could not be permitted to deny the validity of the instrument as a bill of exchange, after raising money upon it as such, in the manner shown by the proof. In the case of Cooper v. Meyer & Meyer, 10 B. & C. 468, a bill was drawn in the name of a fictitious person payable to the order of the drawer, with his name endorsed in blank, and the bill was accepted for the accommodation of one Darby, who transfered it to the plaintiff. Lord Tenterden said, the acceptor ought to know the hand-writing of the drawer, and is, therefore, precluded from disputing it; but he may dispute the endorsement, where the endorser is a real person, but if in reality, there is no such person, the fair construction is that the acceptor undertook to pay to the signature of the same person, who signed for the drawer. —See also, Gibson v. Minet, 1 H. B., 569 ; Pruit v. Chapman, 6 Ala. 86. Whether then we consider the bill as actually drawn and endorsed by the parties, whose names appear on the bill as drawer and endorser, or whether they are fictitious persons merely, I think the conduct of the acceptors estops them from denying the validity of the bill, and supersedes the necessity of proving the signature of the endorser.

2. But we feel constrained to hold that the court erred in regard to the measure of damages. It is true, that if the bill created a *bona fide* debt from the acceptors to the payee, he might sell it in market for whatever it would bring, and his endorsement would entitle the holder to recover the full amount against the acceptors.—Crow v. Hendricks, 7 Wend. 569 ; Munn v. The President & Directors of the Commission Co., 15 Johns. 44; Mazerzan v. Mead, 21 Wend. 285 ; Nickols v. Fearson et al., 7 Pet. 103. But the evidence does not warrant the legal presumption that the bill constituted a valid debt from the acceptors to the payee. It was first seen in the possession of one

of the members of the firm, with the name of the payee endorsed thereon. The law could only presume, in the absence of all other proof, that the bill had been taken up by the firm. It could not be considered as evidence of a debt due to the payee, nor to the member of the firm who had the possession of the bill, but the law would presume the bill had been taken up and discharged by the acceptors, and they can only be held liable on the bill, on the presumption that it was again put in circulation for their benefit before maturity. We cannot presume it was put into circulation for their benefit, and upon the same evidence presume that it was a *bona fide* debt due to the payee of the bill, or to an individual member of the firm. We admit that if a firm should give their note or bill to one of its members, his endorsee may maintain a suit upon it, (Smith v. Stroder, Perrine & Co., 9 Port. 446, and cases there cited,) but the difference between that case and the case at bar is this; that here there is no evidence that the bill created an indebtedness from the firm of Brodnax, Newton & Co. to Robert Brodnax, for the possession of Brodnax must be considered the possession of the firm, under the evidence as it now stands, and his act of transfer as the act of the firm. It is this that estops them from denying the validity of the bill, without regard to the question whether it was a valid debt against the firm, before the transfer, or not. The legal presumption, arising upon the evidence, being that the bill did not constitute a debt before it was purchased of the broker by the plaintiff, he cannot recover the full amount of the bill with interest thereon, inasmuch as he purchased it at a greater rate of discount than lawful interest; for no case, we apprehend, can be found that holds that the full amount of a bill or note may be recovered, although purchased at a discount of more than lawful interest, if the bill or note did not constitute a valid debt at the time of the discount, but in truth, became a debt by the very act of discounting it. See the cases cited above, also, Powell v. Waters, 17 Johns. 176; Aby v. Rapelye, 1 Hill, 563; Long v. Gantly, 4 Dev. & Bat. 313. Indeed, if we were to hold that the plaintiff could recover the full amount of the bill, merely because the conduct of the acceptors, in putting it into circulation for their benefit, had estopped them from denying the validity of the instrument as a bill of exchange, we should then open a door, or sanction a device, by which the statute against

usury would be entirely evaded. It would only be necessary that the contract should assume the shape of a bill of exchange, and be put into circulation through an agent, and this would give complete validity to the bill, although it was made for the purpose of raising money in the market, and constituted no debt until it was discounted. Such a proposition would be opposed to all authority. We feel entirely satisfied, that, inasmuch as we cannot under the evidence contained in the record, consider the bill a valid security for a debt before the plaintiff purchased it, the court erred in charging the jury that the plaintiff was entitled to recover the full amount of the bill with lawful interest. If the proof, upon another trial, should be the same, or should it show that the bill did not constitute an indebtedness from the acceptors to any one, until the bill was discounted by the plaintiff, then we think it clear that the plaintiff could recover only the amount he actually advanced upon the bill, for the contract under such proof would be usurious, and a recovery could be had only to the extent allowed by the statute. Let the judgment be reversed and the cause remanded.