## CHEEK vs. WALDRUM and WIFE.

1.  A sale under a mortgage, made after the law day of the deed, and in pursuance of its terms, vests in the purchaser all the title conveyed by the mortgage, divested of the equity of redemption.

2   When the wife is seized in fee simple of lands at the time of her marriage, her husband, by virtue of the marriage, takes at least an estate for her life, which is a legal freehold subject to levy and sale under execution at law against him.

3.  When a mortgagor conveys mortgaged lands by an absolute conveyance, the estate of the purchaser is liable to be divested by a sale under the mortgage; and if the lands are subsequently sold under the mortgage, his widow is not entitled to dower in them.

4.  The law attaches interest as an incident to a debt from the moment it is due, unless there is some agreement between the parties to the contrary; the fact that the vendor acted in bad faith, and attempted to repudiate his contract altogether, does not relieve the vendee from the payment of interest, on a bill filed to enforce a vendor's lien.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. J. W. LESESNE.

THE original bill in this case was filed by Randal Cheek to enforce his vendor's lien for the unpaid purchase money of certain lots in the town of Hayneville, which he purchased at sheriff's sale under execution at law against Charles Waldrum, and afterwards sold to Susannah Waldrum, the wife of said Charles. The sale to said Susannah was made on or about the first of January, 1848, for the sum of $595, of which $180 were paid when the vendor executed a conveyance of the premises to one Gray, as trustee for Mrs. Waldrum; but it does not appear that any further payment of the purchase money has ever been made. The bill alleges, that the whole of the purchase money was due on the first day of January, 1848, and was to bear interest from that time until paid; that these were the terms of the contract of sale, but, if complainant is mistaken in this respect, then he alleges that the purchase money was to be paid so soon as that sum could be made by the defendants from the business of tavern-keeping in said house, for which purpose they have constantly used it since said sale; that the defendants have constantly used and

occupied the premises since the said sale, and have realized more than $1000 from their said business since that time; that said Susannah has frequently promised to pay the balance of the purchase money, but has hitherto failed to do so; that no note was taken for its payment; that said Susannah, by an act of the Legislature, approved February 22, 1848, was made a "free dealer, and capable of contracting as a *feme sole;*" that the defendants are insolvent, and own no property except said premises.

The defendants all answer the bill. Gray admits that he wrote the deed from complainant to himself as trustee of Mrs. Waldrum, and that it was fully executed by the former, but disclaims all interest in the suit; says he has done nothing under the trust; and proposes in his answer to resign his office as trustee.

Waldrum and wife file an original and an amended answer, an answer to an amended bill, and a cross bill; but there is no amended bill in the record. In the first of these, the contract for the sale of the premises is admitted to be, as to the sum to be paid, what the bill charges it to be, but it is denied that it was to bear interest as charged, or that it was due on the 1st day of January, 1848, or at any particular day, but alleges that it was to be paid as the amount was made by them from keeping tavern on the premises. They set up the payment of $180 at or near the time of the sale, and aver that the balance, with interest upon it, would have been paid, but that the complainant repudiated the contract, and brought ejectment for the premises, denying that he had ever conveyed them by deed. They further aver, that after the deed was made and delivered to Gray, it was handed to Mrs. Waldrum, who on the same day placed it in the hands of complainant for safe keeping. They admit their uninterrupted possession of the premises, and say they have never realized from tavern keeping more than enough to pay the expense of keeping up the house. The insolvency of Susannah Waldrum is denied. They also deny that complainant purchased the premises at sheriff sale, at the request of Mrs. Waldrum or her husband. This is the substance of their answers to the original and amended bills.

In an amended answer afterwards filed by them, it is set

up by way of defence, that, previous to her marriage with Waldrum, Mrs. Waldrum had been the wife of one Farley, who owned and possessed the premises in dispute, by purchase from one Lanier, in the year 1840 ; that he took from said Lanier a deed in fee simple for the premises, and continued to possess and use them until his death ; that when Farley purchased of Lanier, there was an existing unsatisfied mortgage on the premises, made by Lanier to one James T. Neil, to secure the payment of the sum of $800 ; that the premises were sold to satisfy the mortgage after the death of Farley, and at this mortgage sale, John N. Smith became the purchaser ; that in 1841 Mrs. Waldrum paid to Smith the amount of the purchase money, and received from him a quit-claim deed for the premises ; that in 1847 the sheriff of Lowndes county sold the premises under writs of execution issued on judgments at law against the defendant Charles Waldrum, and at that sale complainant became the purchaser ; that complainant by his purchase took no title except such as was in Charles Waldrum, and this, the answer insists, was none.

After this answer was filed, the defendants Waldrum and wife set up by a cross bill a claim to dower in the premises for Mrs. Waldrum as the widow of Farley, alleging that it was the homestead of Farley at the time of his death, and that no dower has ever been allotted to her ; that she received the deed from Cheek, and both of them contracted with him, in ignorance of her rights, " *if they ever contracted with him at all in reference to the premises.*" Mrs. Waldrum avers, that Charles Waldrum, her present husband, had no interest in the premises which could be levied on and sold under execution at law, at the time Cheek purchased ; that Cheek has no title, nor did he ever have, but that the title is in herself ; that Cheek refuses to rescind the contract made between them. The cross bill prays that the contract with Cheek be annulled and held for naught, and for general relief.

Gray is no party to the cross bill, either as complainant or defendant. Cheek answers, setting out the matters contained in the original bill, and denying the principal matters contained in the cross bill. He avers that he bought the premises at the express request of Waldrum and wife ; that Mrs. Waldrum accepted through her trustee a deed in fee for the

premises, with the knowledge and consent of her husband, and, as he believes, with a knowledge of all her rights.

A deed from one Turner to Lanier for the premises was exhibited, and its execution admitted; also, a deed in fee from Lanier to Farley, and a. quit-claim deed from Smith and wife to Mrs. Waldrum, then the widow of her first husband, Samuel Farley. The deed of mortgage from Lanier to Neil, which is admitted in the answer, is not in the record. The proof shows that Waldrum and wife received from monthly boarders alone upwards of $1000 in the year 1850 and part of the year 1851.

The chancellor dismissed the bill, holding " that the complainant took no title by his purchase at sheriff's sale, and therefore had none to convey; and that the defendants were not estopped from setting up their prior possession, the defect of title in Cheek, and the outstanding title in another. This decree is now assigned for error.

GEO. W. STONE, for the appellant:

1. Cheek had the right to file his bill to sell the house and lot to pay the purchase money, without first suing at law.— White v. Stone, 10 Ala. 441; Forman v. Hardwick, 10 *ib.* 316; Houston v. Stanton, 11 *ib.* 414.

2. The house and lot were clearly subject to levy and sale in payment of Waldrum's debts. She owned the property at the time of her intermarriage with Waldrum, and Cheek purchased at least an estate as long as the marriage continued.— Neil v. Johnson, 11 Ala. 615.

3. The cross bill, setting up as it does that the property was Mrs. Waldrum's—not Waldrum's—at the time Cheek purchased, offers no bar to our right to recover.—See Neil v. Johnson, *supra.*

4. The pretence that Mrs. Waldrum has a dower interest in the property, not yet allotted, is alike groundless. The property had been sold under mortgage, having a prior and paramount lien over the title of Mr. Farley, her first husband. Smith bought the entire title, and left nothing in Farley or his estate, of which the widow could be endowed. When Mrs. Farley, now Mrs. Waldrum, bought from Smith, she acquired the entire title; but she held as purchaser, not as dowress,

5. But if Mrs. Waldrum was entitled to dower, or quarantine, before dower was allotted to her, she acquired, by purchase, the entire estate. Her dower, then, became merged in the other estate, and the partial or qualified life estate was lost. The fee simple was in her, and dower could not be allotted out of her own estate. There could be no parties to such proceeding ; nothing could be accomplished by it.

6. Cheek certainly acquired some interest by his purchase. Mrs. Waldrum purchased that interest, and has the benefit of it. . The property is subject to its payment.

7. Even if Mr. Cheek acquired nothing by his purchase, Mrs. Waldrum purchased from him, and thus admitted he had a right to the property. She has never been disturbed. In such case, she becomes *quasi* tenant to Cheek, and is estopped from disputing his title.—Jackson v. Ayers, 14 Johns. 223 ; 4 Paige 94 ; Whiteside v. Jackson, 1 Wend. 418 ; Jackson v. Walker, 7 Cow. 637; Jackson v. Smith, *ib.* 717; Jackson v. Miller, *ib.* 747; Gillespie v. Battle, 15 Ala.

8. If Cheek had no title, Mrs. Waldrum knew as well, or better than he did, the condition of the title, and all the facts connected therewith. No fraud, or improper act, is imputed to Cheek ; it was simply a mistake of law. In such case there is no relief.—Haden v. Ware, 15 Ala. 149.

9. The record in this case shows almost conclusively, that Cheek purchased at the request of Waldrum and wife, to be re-sold to them, for their accommodation. In such case, they are estopped from gainsaying Cheek's right to sell.—See authorities *supra*, to point numbered 7.

WATTS, JUDGE & JACKSON, *contra:*

I.—1. Charles Waldrum had no such title in the premises as could be sold under execution, at the time of the sale of the premises under execution against him. The premises were conveyed by Turner to Lanier, and by Lanier to Farley, the former husband of Mrs. Waldrum ; and Farley died in the possession, having the legal title, the premises being his last residence. Mrs. Waldrum, then, as the widow of Farley, was entitled to dower in the premises, and the premises having been the last residence of Farley, is entitled to the possession of the premises until her dower is allotted and set

apart to her ; and that has never been done. And this claim of hers to dower is not the subject of levy and sale under execution.—Johnson & Co. v. Spaight, 14 Ala. 27; Doe *ex dem.* Cook and Hardy v. Webb, 18 *ib.* 810, and authorities therein cited.

2. But it is said that the premises, after Farley's death, were sold under a mortgage made by him in his life-time ; that John N. Smith became the purchaser ; and that Smith conveyed to Mrs. Farley, then Mrs. Waldrum ; and that Waldrum, by virtue of his marriage with Mrs. Farley, acquired a property in the premises, subject to levy and sale. To this we answer—1st. There is no sufficient proof in the record, that any conveyance was ever made to Smith by the mortgagee of Farley, nor that Smith ever actually conveyed to Mrs. Waldrum. It is averred and admitted in the record, that Smith purchased at the mortgage sale, but there is no averment or proof that a conveyance was made ; but if it was averred and admitted, as it is that a conveyance was made by Smith to Mrs. Waldrum, still this would not be sufficient, for parol admission is competent evidence only of those facts which may be proved by parol.—See 1 Greenl. Ev. §§ 203, 96. Conveyances of land must be proved by the conveyances themselves. 2d. If these conveyances were sufficiently proved, the result would be still the same, because Mrs. Waldrum's purchase from Smith did not extinguish her right to dower, and to the possession of the premises until her dower was allotted to her. Her dower was a life-estate only in one-third, and by the purchase he acquired a fee simple in the remainder of the property. This placed the property in such a condition, that it could not be sold under execution. The remedy of the judgment creditor was in equity only ; he should have filed a bill to separate the dower from the other interest, and then to subject the interest of Waldrum, acquired in the whole by virtue of his marriage, to the payment of his debt.

3. But it is further contended, that if Waldrum had no interest in the property, subject to levy and sale, Mrs. Waldrum is estopped from setting it up, inasmuch as it is said Cheek bought at her instance and request. If this were so, we deny that it would amount to an estoppel. But the fact is not so,

nor is it proved. Waldrum and wife both positively deny this allegation; this denial is responsive, and there is no evidence in the record to overturn it. See also Cheek's affidavit, made in suit at law, before the bill was filed by him, in which he sets up no such agreement, but says, after he purchased he for some time rented to Waldrum; which negatives the idea that he bought at the instance of Mrs. Waldrum, and on a previous agreement to re-sell to her.

II.—But concede that Waldrum had an interest in the property subject to levy and sale under execution, and still the decree of the chancellor was correct; because, under the contract of sale by Cheek to Mrs. Waldrum, she was not to pay Cheek until she made the money by tavern-keeping. The evidence does not sufficiently show that the money was thus made before the bill was filed.

LIGON, J.—In order to ascertain the rights and remedies of the parties to this record, it is necessary to ascertain the true state of the title to the premises at the time they were levied on by the sheriff of Lowndes county, at whose sale Cheek became the purchaser.

Turner is the source of title, so far as the record discloses, and there is no question between the parties as to his right to convey. The proof shows that he, by deed, conveyed the fee in the lots to Lanier. Lanier conveys it, first, by deed of mortgage, with the power of sale, to Neil, his creditor, and then, while this mortgage was outstanding and unsatisfied, he conveys the same estate, by deed of bargain and sale, to Farley. The latter then took the estate subject to the prior lien created by the mortgage, which lien took precedence of his title and was paramount to it. After the law day of the mortgage, the estate in the mortgagee became absolute, subject only to Lanier's equitable right to redeem, before sale under the mortgage. It does not appear that there was any redemption, either by Lanier, or Farley, the purchaser under him. The mortgagee sold under his mortgage, and Smith became the purchaser at that sale.

At this point, the title again becomes entire in one person; for it is well settled, that a sale under mortgage, after the law day has passed, made in pursuance to the terms of the deed,

vests the purchaser with all the title which the mortgagor conveyed by the mortgage, and he takes it divested of the equity of redemption.

Smith, then, took the fee in the premises at his purchase under the sale made by the mortgagee, wholly unincumbered of the right of Lanier, or Farley as the purchaser from him, to redeem under the mortgage. This being the case, the deed from Smith to Mrs. Farley (now Mrs. Waldrum), conveyed the fee to her. It is true, this deed is in the nature of a quit-claim deed to a certain extent, but it may be better styled a deed of bargain and sale, without covenants of warranty, except as against the grantor and those claiming under him. It conveys, by its express terms, all right, title, interest and claim which the grantor has in and to the premises, to Mrs. Farley, the grantee, which, as we have seen, was the fee in the land.

With this title, thus vested in her, she intermarries with Waldrum, who went into possession of the premises, and who, by virtue of his marriage, took, at the least, an estate for her life, which is a legal freehold estate, and is clearly the subject of levy and sale under execution issued on a judgment at law against him.—Carleton & Co. v. Banks, 7 Ala. 32; Neil v. Johnson, 11 Ala. 615. The estate which Farley took under the deed from Lanier, although apparently an absolute fee, was subject to be divested, by a sale of the lands under the prior mortgage to Neil. When this sale was made, and another became the purchaser, that other was invested with the absolute fee, and all title was divested out of Farley, or those claiming through him. Mrs. Waldrum, his widow, could not charge the title in his hands with any claim of dower, since it had its origin in a conveyance which existed before her husband had any claim whatever, which hovered over the title in his hands while he lived, and divested it out of those claiming under him, by the sale made after his death. Fry v. Merchants' Ins. Co., 15 Ala. 810.

This view is conclusive against the relief sought by the cross bill, which should have been dismissed by the chancellor, and his failure to do so is error.

On the case made by the original bill, answers and proof, the contract of sale appears to be, that Mrs. Waldrum was to

pay to Cheek the sum which the latter paid to the sheriff on his purchase at the sale made by that officer under execution, amounting to five hundred and ninety-five dollars. This is stated in the bill, and expressly admitted in the answers.— There is some discrepancy between the bill and answers, as to the time when the purchase money was to be paid, and an apparent difference on the question of interest. On the latter subject, however, the difference between the bill and the answers of Waldrum and wife, is more in words than in fact.— The bill charges that it was agreed between the parties that the defendant should pay interest on the purchase money from the day of sale, while the answers assert that no agreement was made upon the subject. The law attaches interest as an incident to a debt from the moment it is due, unless there is some agreement between the parties to the contrary. It is not pretended, in this case, that Cheek agreed to postpone the payment of his debt without interest ; on the contrary, the principal defendants admit, in their answers, that they intended to pay interest while the principal debt remained unpaid, and say that they would have done so if the complainant had not acted in bad faith with them, and attempted to repudiate the contract altogether. This does not relieve them from its payment.

As to the time when the purchase money was to be paid, there is no difference between the alternative charge in the bill, and the statements of the answer of Waldrum and wife. They both agree that it was to be paid as soon as the money could be made by the defendants from keeping tavern on the premises. This time has long since passed, according to the bill ; but this is denied in the answers, which assert that nothing has been made by them. The proof shows, however, that the defendants must have received from monthly boarders alone, in the years 1850 and '51, more than a thousand dollars. How much was received from other sources, during these and other years, does not appear ; but we deem it fair to presume that a sum greatly more than was necessary to pay the complainant's demand has been received by the defendants, Waldrum and wife, since the sale to them set out in the bill.

Under these circumstances, it was error to dismiss the com-

plainant's bill. The right decree would have been, to foreclose Mrs. Waldrum's equity of redemption in the premises, and unless the sum due the complainant for his purchase money were paid at an early day, to be fixed by the chancellor, to direct a sale of the premises for its payment. A reference to the master should have been made, in order to ascertain the balance of the purchase money due and unpaid. The trustee, Gray, should have been perpetually enjoined from setting up against the purchaser at the sale under .the decree, the title vested in him by the deed from the complainant.

As, however, this was not done by the court below, the cross bill must be dismissed at the costs of Waldrum and wife ; and the decree of the court below on the original bill reversed, and the cause remanded, at the costs also of Waldrum and wife.