# NEEL *vs.* CLAY.

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN ON LAND, &C.]

1. *Contract for sale of land; to what, vendor's lien attaches.*—A contract for the sale of lands in this State, to be paid for partly in money and partly in bales of cotton, is such a sale as secures to the vendor all the rights incident to a vendor's lien, upon a failure to deliver the cotton at the time agreed on, and such lien may be enforced by bill in chancery.

2. *Damages; measure for breach of contract to deliver cotton.*—The pecuniary liability on a contract to deliver eleven bales of cotton, weighing each five hundred pounds, is, when the contract is broken, the money value of the cotton on the day agreed upon for its delivery or payment, when no price is fixed in the contract.

3. *Same; when bears interest.*—The value of the cotton on the day of payment, thus ascertained, fixes the amount of the debt against the party bound to deliver the cotton; and this is such a debt as bears interest from the date fixed for the delivery of the cotton.

4. *Same; what rate of interest governs such contract.*—Such a contract is governed, as to interest, by the rate prescribed by the Code; and an attempt to collect a greater rate of interest on such contract than eight per cent. per annum is usurious.—Rev. Code, §§ 1827, 1828.

5. *Principles of law enunciated in foregoing head-notes; applied to facts of the present case.*—C., in 1866, sold land to N. for $2,000 cash and twenty-three bales of cotton, weighing each five hundred pounds; the money was paid, N. was put into possession of the land, and the cotton was agreed to be delivered about the first of January following; but N. was only able to deliver twelve bales of the twenty-three when the cotton fell due; this left eleven bales unpaid. At the time of the payment of the twelve bales, the cotton was worth thirteen cents per pound; C. was then willing to "indulge" N. "in the payment" of said eleven bales yet "remaining unpaid;" and in order to do so, agreed with him to take a mortgage on his crop of that year, and postpone the payment of the eleven bales of cotton until some time in the year following, but on a second failure to pay the cotton N. was to account for it at thirty cents per pound. On a bill filed by C. against N. to foreclose his vendor's lien on the land sold to N., C.

Neel v. Clay.

is entitled to recover only the money value of the eleven bales of cotton when they fell due on the contract of sale, and interest thereon at eight per cent. per annum. Any thing more than this was usurious; and if demanded, only the value of the eleven bales, or what remained due thereon at the date the same fell due on the contract of sale, without interest, could be recovered.—Rev. Code, § 1831.

APPEAL from the Chancery Court of Perry.
Heard before Hon. CHARLES TURNER.

The opinion states the case.

BROOKS, HARALSON & ROY, for appellant.
JOHNSTON & NELSON, *contra.*

[No briefs came into Reporter's hands.]

PETERS, J.—This is a suit in chancery, commenced by Clay, the appellee, against Neel, the appellant, to enforce a vendor's lien for the balance of the price of certain lands mentioned in the bill. The cause was heard in the court below on the bill and exhibits to the bill, the answer and exhibits to the answer, and an agreed statement of facts. Neither the bill nor the answer are sworn to, and the verification of the answer, by oath, is waived. The bill alleges, that in November, 1866, Clay sold to Neel, in this State, certain tracts of land lying in the county of Perry in this State, and put him into possession of the same under the contract of sale thus made. This sale was "for the consideration of two thousand dollars in cash and twenty-three bales of cotton, which said twenty-three bales of cotton were to be paid over or delivered" to Clay by Neel "on or before the first day of January, 1868." The sum of two thousand dollars was paid in cash, as agreed on at the sale, and twelve bales of the cotton were also delivered according to the terms of the contract of sale, leaving eleven bales due and unpaid on the first day of January, 1868. These were demanded, but Neel was unable or refused to deliver them, as was required by his contract. The bill then alleges that Clay, "not desiring to interfere with the planting operations of said Neel, *indulged* him in the pay-

ment of the said remaining eleven bales of cotton due and
unpaid on said contract." It is then further alleged, that
on the 11th day of April, 1868, Neel executed a mortgage
on his growing crop to Clay for the purpose of further se-
curing the payment of the purchase-money for said land.
This mortgage is made an exhibit to the bill. And it re-
cites, that Neel was justly indebted to Clay "to the amount
of eleven bales of cotton, weighing each five hundred
pounds. Said eleven bales of cotton are to net said John
P. Clay thirty cents per pound," and to be delivered be-
tween the first of September and the thirtieth December,
1868. The bill also avers, that the balance of the purchase-
money on said lands is $1650, with interest from the first
day of September, 1868; upon which last said sum said
Neel is entitled to a credit of $275, and interest thereon
from the first day of December, 1868. The answer of Neel
admits the contract of sale, as set forth in the bill; that
the cash payment was made, and that the twenty-three
bales of cotton were "to be raised, packed, and delivered
by or before the first day of January, 1868." The answer
also admits the execution of the mortgage, as shown in
the exhibit to the bill; but it is insisted, "that the said
mortgage," containing the "stipulations as therein set forth,
was executed to complainant by respondent for and in con-
sideration of the indulgence and forbearance which com-
plainant agreed to extend to him as aforesaid, and for no
other consideration, and that by reason thereof the same
is a contract for the forbearance of goods at a greater rate
than eight dollars upon one hundred dollars for one year,
and that said contract is illegal and usurious, and without
adequate consideration, and that the complainant is not
entitled to recover of respondent the amount stipulated for
in said mortgage, or any interest upon the amount due him
at the time said mortgage was executed." It is also insisted
in the answer that, after the execution of said mortgage,
in the fall of the year 1868, said Neel delivered to said
Clay three bales of cotton, weighing fifteen hundred pounds,
on account of his liability to said Clay and in part payment

thereof, and that said cotton last said was sold for more than $275, and that respondent is entitled to credit for the whole gross amount for which said three bales of cotton was sold, without any deduction whatever; and that no part of the proceeds of said three bales of cotton and the credits to which he is entitled since said last mentioned mortgage was made, should be applied to the payment of the interest on his said liability, but only in the payment of the principal indebtedness. The answer also denies the indebtedness of Neel, as stated in dollars in the bill, and his liability to deliver cotton of any certain grade; and he affirms that upon a proper account he does not owe the said Clay a sum exceeding $250, which he is ready to pay, upon proper title to said lands being made to him. The facts agreed upon by the counsel of the parties and submitted as part of the evidence in the cause, state the contract of sale as set out in the bill, except it does not show that the twenty-three bales of cotton were to be delivered on or before the first day of January, 1868, but it shows that Clay's bond for title to Neel, which bears date the 14th day of November, 1866, which was the day of the sale, recites that the twenty-three bales of cotton should each weigh five hundred pounds, and be "delivered to said Clay as soon as picked by Neel, during the months of September, October, November, and December, 1867;" and it is admitted that Neel, at the same time, executed a mortgage to Clay on his crop of corn and cotton to be raised on said lands during the year 1867, to secure the delivery of said twenty-three bales of cotton, to be void on condition "if Neel should deliver to Clay twenty-three bales of cotton, netting five hundred pounds each, which was to be delivered between the first day of September and thirtieth December, 1867;" and at the time of the sale cotton was worth twenty-four cents per pound. It is further admitted, that Neel, in November, 1867, delivered twelve bales of cotton to Clay, and Clay demanded the balance due, and threatened to foreclose his mortgage; but at the solicitations of Neel, he, on or before the 30th day of December,

1867, agreed to extend the time of the delivery of the remaining eleven bales until the ensuing fall, 1868, if Neel would give him a mortgage on his crop to be raised that year, (1868,) and guarantee to Clay that the cotton should net him thirty cents per pound. At the time of this offer, cotton was worth thirteen cents per pound. Neel at length agreed to this, and upon the 11th day of April, 1868, the mortgage mentioned in complainant's bill was executed and delivered as therein shown. In this mortgage Neel acknowledges that his indebtedness to Clay is *eleven* bales of cotton, weighing five hundred pounds each, and to net Clay thirty cents per pound, to be delivered in good order during some time between the *first* of September and the thirtieth of December, 1868. It is also admitted, that middling cotton was worth, in Selma in this State, twenty-four cents per pound on 1st of September, in 1867, and twenty cents per pound on 1st of October, and fifteen cents per pound on 1st of November, and $12\frac{1}{2}$ cents per pound on 1st of December, in the same year, (1867); and that it was likewise worth thirteen cents on 1st of January, 1868, and thirty-three cents per pound on the 11th day of April in the same year, when the mortgage was given, and twenty-seven cents per pound on the 1st of April, 1869, when the bill in this case was filed, and twenty-five cents per pound on the 1st of January of the same year, (1869).

I have thus stated the pleadings and the facts of this case at considerable length, because the case is somewhat anomalous, in whatever aspect it may be considered. Upon the hearing, the learned chancellor decreed in favor of the complainant's right of lien on the land sold, and also directed an account to be taken to ascertain the balance of the purchase-money unpaid, "to the amount of the market value in the city of Selma, Alabama, on the first day of January, 1869, of *eight* bales of low middling cotton, each bale to weigh five hundred pounds." It was also directed that the account thus ordered to be taken on this basis, should charge interest on the amount thus ascertained from the first day of January, 1869. The master ascertained

and reported the debt to be $1000, and the interest on the same up to the 27th of April, 1870, the date of the report, $106; making an aggregate of $1106. This report was confirmed without objection, and the final decree was in accordance with the same, with directions for a sale of the lands mentioned in the bill, in default of payment of the amount thus decreed, within five days from the date of the final decree. From this decree the appellant, Neel, brings the cause to this court, and assigns the decrees of the court below as error.

There is no question that the land sold by Clay to Neel had not been fully paid for, and that Clay, as the vendor, retained a lien on the land thus sold for security of the payment of the balance of the price unpaid. To this extent he was clearly entitled to relief, unless he had in some way relinquished or forfeited his right.—*Napier et al. v. Jones*, January term, 1872. And the main question in the case is, what was this balance at the date of filing the bill? This is the sole difficulty in the cause. We must look to the contract of sale alleged in the bill, to ascertain this. This contract is clear and free from any question of serious doubt. It is admitted in the answer to be there correctly stated. It shows that the lands mentioned were sold for two thousand dollars, to be paid down in cash, and twenty-three bales of cotton, to be delivered on or before the first day of January, 1868. It also appears, by the vendor's bond for title, which was a part of the contract of sale, that these bales of cotton were to weigh five hundred pounds each. Of the twenty-three bales of cotton, twelve were delivered, as required by the contract of sale, on or before the first day of January, 1868; and as to the eleven other bales, there was a failure to deliver them in time. There was, then, a breach of the contract to this extent. This breach fixed the amount of the indebtedness of Neel to Clay upon the original contract, which is that alleged in the bill, and to which the incident of the vendor's lien attaches. In this contract there was no price fixed upon the cotton. It was a contract to be discharged by the de-

livery of specific articles. On a breach of such a contract, the indebtedness incurred is the pecuniary value of the articles agreed to be delivered at the date of delivery.— *Rose's Ex'r v. Bozeman*, 41 Ala. 678; *Robinson v. Noble's Adm'r*, 8 Pet. 181; 22 Ala. 515; 3 Par. on Contr. p. 215, note *b*, 5th ed.; *Jackson v. Waddell*, 1 Stewart, 579; S. C. 1 Smith Cond. 551. Here the day of delivery was the first day of January, 1868. On that day the admissions show that the market price of the cotton was thirteen cents per pound, and the quantity to be delivered was five thousand five hundred pounds, or eleven bales of five hundred pounds each. This would make Neel's indebtedness to Clay on that day the sum of seven hundred and fifteen dollars. This was the sum Clay was entitled to have in *lieu* of the cotton on the first day of January, 1868. But Neel was not able at that time either to deliver the cotton or to pay the money it would have brought in the market; and he asked and obtained *indulgence* for further time to discharge his liability. He was driven to this by his necessities. The admitted facts show that the time of the delivery of the cotton was *extended*, as shown in the mortgage of April 11, 1868, until the next year. The bill is not filed to enforce this mortgage, but only the vendor's lien arising out of the first contract of the sale of the land. The contract set up in the bill is not that admitted in this mortgage. The two contracts are not the same. They fall due at different times, and the price of the cotton was left open in the first case, and fixed in the second. It is not asserted that this second contract preserved the lien upon the lands that was incident to the first, or that it did away with the first contract. This was evidently not the purpose of the parties. And so far as appears from the pleadings and the facts admitted, it had no consideration except the *indulgence* or *extension of the time* for the delivery or payment of the eleven bales of cotton, then remaining due and unpaid, on the price of the land under the original contract of sale. This clearly impresses my mind as a contract for the postponement or forbearance of the delivery of the cotton for

another year. In such a case, the law does not permit a greater increase of the debt than eight per cent. of the thing forborn, for each year of the forbearance. And the statute covers money, or goods, or things in action. I quote the portion of the Code limiting this right below. It is this: "The rate of interest upon the *loan* or *forbearance* of money, goods, or things in action, is eight dollars upon one hundred dollars for one year, and at that rate for a greater or less sum or a longer or shorter time." "All contracts, express or implied, for the payment of money or other thing, or for the performance of any act or duty, bear interest from the day such money or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed." Rev. Code, §§ 1827, 1828. If the rate of interest upon the loan *or* forbearance of goods, money, things in action or upon any contract whatever, is greater than eight per cent., the contract is usurious, and can not be enforced, except as to the principal; and if any interest has been paid, the same must be deducted from the principal, and judgment rendered for the balance only.—Rev. Code, § 1831. What are called "change bills" of one dollar or less are excepted out of this limitation. They bear interest at one hundred per cent. per annum.—Rev. Code, § 1832. This is the settled rule at law in this State.—*Sprague et al. v. Zunts*, 18 Ala. 382; 17 Ala. 761. This view of this statute as to the amount of the recovery is not followed in some cases in courts of chancery, but I think without any valid reason for the departure, and in open violation of the words of the statute.—*Noble & Bro. v. Walker*, 32 Ala. 456; *Hunt et al. v. Acre et al.*, 28 Ala. 580; *Pearson v. Bailey*, 23 Ala. 537. In order to rescue the transaction between the parties from the taint of usury, it may be said that it was a loan of eleven bales of cotton at the date of the last mortgage, on the 11th day of April, 1868, by Clay to Neel, which were to weigh five hundred pounds each, and valued at thirty cents per pound, to be returned in a like quantity of cotton at a like price at the termination of the loan, or to pay for

the same, on a failure of such delivery, the price fixed upon at the loaning. But such a supposition would not comport with the real facts of the case, nor with the allegations of the bill, or with the admitted proofs. But the allegations of the bill, the answer, and the proofs, show that the transaction grew out of a mere forbearance of the payment or delivery of the eleven bales of cotton, which were past due, for another year. Such a transaction can not increase the liability beyond the rate of interest fixed by law.—*Miller v. Bates*, 35 Ala. 580; *Matlock v. Mallory*, 19 Ala. 694; *Bk. U. S. v. Waggener*, 9 Pet. 378, 379.

In this case, after deducting the credit of $275, which is not disputed, the real indebtedness, by the forbearance or indulgence, was very nearly doubled. And if such contracts are permitted, it might have been quadrupled. It would leave the creditor without a limit upon his harsh exactions, and it would open a door for the utter disregard of the statute, and encourage the most grievous oppressions, which are contrary to the policy of the law forbidding usury, which is so forbidden because it tends to such oppressions, contrary to the principles of courts of equity to enforce.—1 Story Eq. § 307, *et seq.; Pauling v. Ketchum, adm'r*, June term, 1871; *Balkum v. Brear*, January term, 1872; *Eslava v. Lepetre*, 21 Ala. 504. I therefore feel constrained to treat the contract for indulgence or forbearance of the payment or delivery of the cotton as referred to in the bill and set out in the mortgage of the 11th day of April, 1868, as one in violation of the statute against usury. This deprives the complainant in the court below of all right to interest. This leaves the balance due him on his contract for the sale of the lands, mentioned in the bill, the sum of four hundred and forty dollars. For this sum the decree of the court below should have been rendered, without interest. In exceeding this sum the court erred.

The judgment of the court below is therefore reversed; and this court, proceeding to render the judgment that the court below should have rendered, doth order, adjudge and decree that the said John P. Clay, the complainant in the

court below, and the appellee in this court, have and re-
cover of and from the said Solon Neel, the defendant in
the court below, and the appellant in this court, the said
sum of four hundred and forty dollars, the balance of the
price and purchase-money for the lands mentioned and
described in said bill of complaint; and that said sum of
money, last above mentioned, is a lien upon said lands in
said bill so mentioned and described as abovesaid. It is
further ordered, adjudged and decreed that the said Solon
Neel, said appellant, pay to the said John P. Clay, said
appellee, within ten days after the adjournment of this
court, the said sum of four hundred and forty dollars, and
in default thereof, that the register of the chancery court
of the county of Perry, in this State, proceed to sell, in the
manner prescribed by law for sales by sheriffs upon execu-
tions at law, the lands mentioned and described in said
complainant's bill of complaint; that is to say, one hun-
dred acres lying on the west side of and extending north
and south the whole length of fraction "B," west of the
Cahaba river, in section thirty-three, and the length of the
north-west quarter of the south-west quarter of same sec-
tion, say two hundred and forty rods long, and wide enough
eastward to embrace said hundred acres, lines on each side
parallel, less three and 45-100 acres, the same being the
lots on which the buildings and well of J. W. and F. Bor-
den were situated in the year eighteen hundred and sixty-
one, and situate and lying immediately west of the road
leading from Selma to Marion; all lying in section thirty-
three, township eighteen and range nine, of the lands sub-
ject to sale at Cahaba, Alabama. Also, another tract, be-
ginning at a point on a line due west of the south-west
corner of the north-east quarter of the south-west quarter
of fractional section number thirty-three, township eighteen,
range nine, east, on the west side of Cahaba river, distant
three chains and thirty links to a corner, thence north
twenty-two minutes east, seventy-nine chains to the west
bank of said river, thence with the meanderings of said
river to the south-east corner of fraction A of said sec-

tion, thence due west on the line of the south boundary of said fraction "A" twenty-eight chains and forty links to a corner in the centre of said section, thence south eighty-nine degrees and thirty-eight minutes west, twenty chains, to a corner, thence south sixty-four degrees and thirty minutes west, twenty-two chains and twenty-two links to the south-west corner of the north-west quarter of the south-west quarter of said section, thence due west three chains and thirty links to the beginning, containing one hundred and sixty-six acres, lying and being in said fractional section thirty-three, township eighteen, range nine, east. Also, another parcel of land adjoining the last mentioned tract, beginning at a point three chains and thirty links due west of the north-east corner of the west half of the south-west quarter of said section thirty-three, township eighteen, range nine, east, thence two chains and sixty-eight links, to a corner in the public road leading from Hamburg to Selma, thence with said road north fifty-three degrees, west five chains to a corner, thence south seventeen degrees, west eight chains, to a corner, thence north twenty-two minutes east, to the beginning, containing three and 46-100 acres, more or less; and the south-west quarter of the south-west quarter of section thirty-three, township eighteen, range nine, in the Cahaba land district, containing forty acres, more or less. And upon making said sale the register aforesaid shall execute and deliver to the purchaser or purchasers of said land, at said sale, a good and sufficient deed or deeds of the lands so sold, vesting in the said purchaser or purchasers all the right, title and interest of said Solon Neel, in and to said lands so sold under authority of this decree. And out of the proceeds of said sale of said lands so made by the register aforesaid, he shall pay to the said John P. Clay, said complainant in the court below, the said sum of four hundred and forty dollars, the amount above decreed to him, with interest thereon since the date of the rendition of this decree, up to said sale; (Revised Code, § 1829,) and the balance, if any, together with a proper statement of his acts and

doings in the premises he shall report to said chancery court of Perry county aforesaid, at the term thereof next after said sale. And the said John P. Clay, said complainant in the court below, will pay the costs of this suit, in this court and in the court below.—Rev. Code, § 2781; *Black v. Hightower*, 30 Ala. 317.