(88 South. 743)

## ZIMMERN v. STANDARD MOTOR CAR CO.
### (1 Div. 184.)

(Supreme Court of Alabama. April 21, 1921.)

**1. Sales ⊖⇒201(1) — Delivery subsequent to agreement not inconsistent with idea of sale.**

When the buyer and seller agree upon the terms of sale, though the property may not be delivered at such time, it is not inconsistent with a sale of personal property that it is delivered at a subsequent time.

---

[1] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in the Alabama Reports.

**2. Sales 364(4)—Instruction not erroneous as eliminating consideration of representations of nature and quality of truck purchased.**

In an action on a note given for the price of a motortruck, special pleas having sought to avoid payment of the note by the fact that defendant buyer relied on misrepresentations made at the time of the purchase of the truck that induced him to purchase, a charge that, if the order for the truck was signed by defendant buyer after conversation was had between the seller's agent and the buyer over the telephone, then no conversation on the part of the seller's agent or representations as made by him after the signing of the order would be binding on the seller, did not take from the jury consideration of representations of the nature and quality of the truck being purchased made to defendant buyer subsequent to the telephone conversation and prior to his execution of the written order.

**3. Trial 256(2)—Counsel should have requested charges explanatory of charge though misleading.**

If counsel for defendant buyer of a motortruck, sued on a note given for the purchase price, were of the opinion that a charge was misleading or likely to be misunderstood by the jury, explanatory charges should have been requested.

**4. Appeal and error 1058(2)—Exclusion of witness' testimony comparing truck purchased with other makes not reversible error.**

In an action on a note given for the purchase of a Winther motortruck, exclusion of testimony as to the witness' comparison of the truck purchased with a Packard or a White truck was not reversible error, the observation called for not being authorized by the statement of the witness, who said that he was familiar with the Winther truck to a certain extent only, and witness having fully testified as to the matter on further examination.

**5. Sales 355(1)—Exclusion of testimony as to classification of automobile trucks not error under the pleadings.**

In an action on a note given for the purchase of a certain kind of motortruck, where the defense represented by the special pleas was that of the representations of seller's agent that parts of the kind of truck sold were made of as good material and as durable as those of any first-class truck, and no issue was made as to how the kind of truck sold classed generally with other kinds of trucks, exclusion of testimony of defendant's witness who had testified that he handled other kinds of trucks, as to classification of trucks in the automobile business, was not error.

**6. Evidence 114—Witnesses 236(4)—Fact that repairs to motortruck purchased necessary within short time admissible for defendant buyer.**

In an action on a note given for the purchase price of a motortruck, the defense being misrepresentations inducing the purchase, although the fact that repairs to the truck had been made or were necessary within a short time after its purchase was competent and relevant evidence for defendant, yet it was not proper to ask defendant, testifying in his own behalf, what a particular charge was for without identifying it as for repairs on the truck in question; the bill itself being the better evidence.

**7. Sales 52(4)—Custom of defendant motortruck buyer's business admissible for plaintiff seller, claiming overloads.**

In an action against a coal dealer on a note given for the price of a motortruck, where defense was misrepresentations as to capacity of truck, the custom of defendant dealer's business in delivering an order for coal for a certain slip showing weights to go out with it was competent to explain plaintiff seller's insistence that it frequently happened in the conduct of the business that the trucks, including the one made the basis of the suit, in hauling coal were overloaded, and that such fact was known to defendant buyer.

**8. Witnesses 268(1)—Cross-examination of witness for defendant buyer proper.**

In an action against a coal dealer on a note given for the price of a motortruck, cross-examination of a witness who testified at the instance of defendant that he had purchased a five-ton truck of the same type from plaintiff motorcar company which had given him trouble relative to whether a truck of another make sold by him to the county had given any trouble, etc., *held* proper.

**9. Evidence 553(2)—Question to expert witness testifying as to effect of overload on motortruck within rule as to hypothetical questions.**

In an action on a note given for the price of a motortruck defended for misrepresentations as to quality, question propounded to the seller's agent as to what would be the effect on a two-ton truck stuck with an overload to make it pull out *held* within the rule that every fact in evidence need not be hypothesized in questioning an expert, but only sufficient facts fairly to justify formulation of an opinion on the material issue.

**10. Evidence 553(4) — Hypothetical questions should not contain elements of fact not shown.**

Hypothetical questions should not contain elements of fact not shown by the evidence.

**11. Appeal and error 1161—Statement of appellee's counsel not concession verdict erroneous as to interest.**

Statement by counsel for plaintiff appellee that, if the court should find the jury charged too much interest against defendant, plaintiff had no objection to the judgment being corrected, is not a concession by plaintiff's counsel that the verdict was contrary to the facts and law governing the allowance of interest.

**12. Interest 61—Interest attaches as incident to debt or money demand.**

Unless there is an agreement to the contrary, interest attaches as an incident to a debt or money demand, as contradistinguished from mere damages for the breach of a contract, from the time of its maturity or when payment is due or may be demanded.

---

**13. Interest** ⬤⇒37(1)—**Legal rate of 8 per cent. obtained after maturity in absence of contrary stipulation.**

Where the parties to a note given for the price of a motortruck did not stipulate for a special rate of 6 per cent. until paid, the contract, as to a conventional rate of interest of 6 per cent., was not binding after maturity, and thereafter the legal rate of 8 per cent. obtained.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action in assumpsit by the Standard Motor Car Company against Samuel Zimmern. Judgment for the plaintiff, and the defendant appeals. Transferred from Court of Appeals, under section 6, Acts 1911, p. 449. Affirmed.

Charge 3 given for the plaintiff is as follows:

"I charge you that, if you believe that the order for this truck in question was signed by the defendant after the conversation was had between Mr. Steele and defendant over the telephone, then no conversation on the part of Steele, or representations as made by him after the signing of said order, would be binding upon the plaintiff in this case."

Harry T. Smith & Caffey, of Mobile, for appellant.

Under the evidence in this case, court erred in giving charge 3 for the plaintiff. 43 Mich. 623, 5 N. W. 1054; 62 Iowa, 442, 17 N. W. 654; 46 Pac. 1047; 7 Wall. 136, 19 L. Ed. 109; 23 How. 172, 16 L. Ed. 424; 56 N. Y. 558, 15 Am. Rep. 449; 29 Mich. 53. Under pleas 4 and 5, the court erred in its rulings on the evidence. 17 Cyc. 36; 56 Ark. 465, 20 S. W. 272; 95 Ark. 284, 129 S. W. 280, 30 L. R. A. (N. S.) 360; 38 N. Y. 175; 42 Tex. Civ. App. 280, 93 S. W. 489; 119 Ala. 260, 24 South. 858; 12 Ala. 648; 69 Ala. 379; 145 Ala. 639, 39 South. 603, 117 Am. St. Rep. 61; 58 Or. 557, 115 Pac. 596; 114 Pac. 943; 49 Colo. 378, 113 Pac. 1005; 165 Ala. 621, 51 South. 833; 183 Ala. 326, 62 South. 859. The nature of the repairs was material to the nature of the defect repaired. The individual habits of the plaintiff, relative to sending out slips was not admissible. 35 Ala. 209; 127 Ala. 482, 28 South. 967; 132 Ala. 275, 31 South. 616; 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148. Counsel discuss the verdict, but without citation of authority.

Gordon & Edington, of Mobile, for appellee.

Counsel discuss the assignments of error, and criticized the cases cited by the appellant, and insist that there is no error in the record; but they cite no authorities in addition to those cited by appellant.

THOMAS, J. The plaintiff brought suit to recover payment for a Winther gasoline truck. Defendant replied with the general issue and special pleas alleging that the note made the foundation of the suit was in payment for the truck indicated, and alleging and reciting the misrepresentations on the part of the vendor's agent that induced its purchase.

After introduction of the evidence, plaintiff requested in writing charge No. 3, the giving of which is made the basis of assignment of error. Supporting the charge was testimony tending to show that on the day the truck was ordered plaintiff's sales agent, Mr. Steele, was in Brewton and had a telephone conversation with defendant in Mobile relative to the sale, and from which conversation a sale of the truck may be inferred or was fairly disclosed. It was further testified that shipment was ordered the same day by seller's agent. Among other things, relative to the telephone conversation, Mr. Zimmern testified that he told Mr. Steele he would take a Winther truck and closed the deal and signed written order therefor some days later, that "I closed the deal over the telephone, and I would take his word for it," and "bought the truck from him on his recommendation." Of this Mr. Steele testified that the price, being stated, was agreed upon, and Mr. Zimmern "told me that he would take the truck," and on the redirect and recross examination said:

"When I had that conversation with Mr. Zimmern over the telephone at Brewton, that truck was ordered from Illinois * * * from the factory before I left Brewton. Mr. Goff * * * ordered that truck out by letter * * * before I came from Brewton to Mobile. * * * After I returned to Mobile I had another conversation with Mr. Zimmern about that matter. That was about two or three days after our first one on the telephone."

Plaintiff's testimony tended to show that the written order was signed by Mr. Zimmern the day after his agreement of purchase by telephone with Mr. Steele. Such was the testimony of Mr. Kearns, the general manager of plaintiff company.

[1] When the buyer and seller agree upon the terms of sale, though the property may not be delivered at such time, it is not inconsistent with a sale of personal property that it be delivered at a subsequent time. Dowling-Martin Gro. Co. v. Lysle Mill. Co., 203 Ala. 491, 83 South. 486; Lysle Mill. Co. v. North Ala. Groc. Co., 201 Ala. 222, 77 South. 748; Lawrenceburg Roller Mills Co. v. Jones, 85 South. 719;[1] Brandon Printing Co. v. Bostick, 126 Ala. 247, 28 South. 705; Robinson v. Pogue, 86 Ala. 257, 5 South. 685; Pilgreen v. State, 71 Ala. 368.

[2, 3] The special pleas having sought to avoid payment of the note by the fact that defendant relied upon misrepresentations made at the time of the purchase of the

truck and that induced defendant to the purchase (Standard Motor Car Co. v. McMahon, 203 Ala. 158, 82 South. 188; Greil Bros. Co. v. McLain, 197 Ala. 136, 72 South. 410; Prestwood v. Carlton, 162 Ala. 327, 332, 50 South. 254; Ball v. Farley, 81 Ala. 288, 292, 1 South. 253; Henry v. Allen, 93 Ala. 197, 9 South. 579; Corry v. Sylvia y Cia., 192 Ala. 550, 68 South. 891, Ann. Cas. 1917E, 1052; see Code, §§ 2469, 4298, 4299), the giving of charge 3 did not take from the jury a consideration of the representations of the nature and quality of the truck being purchased, made to defendant subsequent to the telephone conversation and prior to his execution of the written order. The jury was instructed that, if the order for the truck was signed the day after the telephone conversation in question, then "no conversation on the part of Steele or representations as made by him after the signing of said order would be binding upon the plaintiff." If counsel for defendant were of opinion that the charge was misleading or likely to be misunderstood by the jury, explanatory charges should have been requested. The issue presented by the special pleas was fairly given to the jury by Mr. Steele testifying, without objection, that at all times he made the assertion that the parts of the truck being sold Mr. Zimmern were as good and as strong as the parts of any other high grade truck, etc., and by Mr. Zimmern testifying that Mr. Steele referred to any first-class truck, and mentioned the Packard and White trucks as a part of his recommendations of the superior quality of the Winther truck.

[4] There was no reversible error in sustaining objection to witness Quigley's comparison of the truck purchased with a Packard or a White. The observation called for was not authorized by the statement of the witness who answered, in response to question by the court, "Are you familiar with the Winther truck?" "To only a certain extent." In the light of the qualification by his knowledge and experience—being familiar with the Packard and White trucks and to a certain extent with the Winther truck, made the subject of the suit—he was not in a position to make the comparison or express the opinion called for. However this may be, the witness was then permitted to answer, without objection, that parts of a two-ton Winther truck are of a different construction from the parts of a Packard and a White, the Winther being driven by an "internal gear" and the Packard by a "worm" drive, and gave his opinion that the "Packard construction is a better construction," and, "comparing the two-ton Winther truck with the two-ton Packard and White trucks, I would say that the White and Packard are better trucks," and that in his opinion the latter trucks would not be affected by a "50 per cent. overload." On cross-examination

the witness further testified to the difference in said trucks.

[5] A witness for defendant (William T. Leonard), having testified that he handled the White, Duplex, and Republic trucks and knew there was a truck called the "Winther," was asked, "Do you know how it classes with the White truck?" to which objection was sustained and exception reserved. The witness was permitted to state, without objection, that the quality of the White truck, as to strength and durability, is according to the capacity for which it is built, and stated that he was unfamiliar with Packard trucks. Whereupon witness was asked, "Are trucks classified as to their strength and durability in the automobile business?" to which objection was sustained and exception reserved. The defense presented by the special pleas was that of Mr. Steele's representation that parts of the Winther truck were made of as good material and as durable as those of any first-class truck, or of the trucks mentioned; and no issue of how the Winther truck classed generally with the White truck, or how trucks are classed generally as to their strength and durability. The sustaining of objection to the questions as to classification of trucks in the automobile business was without error.

[6] The defendant, as a witness in his own behalf, being interrogated as to repairs made upon the truck (the basis of this suit) and set forth in the bills exhibited, was asked by defendant:

"I have in my hand a bill dated May 24, 1918 (Exhibit D 1, BAC) from the Standard Motor Car Company, mechanic time, $1.30, on Winther truck; I wish you would state what that charge was for."

To this objection was sustained and exception reserved. Thereafter the witness stated:

"The bill dated June 24, 1918, about which I have been asked, containing the item of $1.30, was gotten by me from the Standard Motor Car Company, as was also the bill of June 19, 1918. The Standard Motor Car Company furnished the axle shaft mentioned in the bill."

Neither the exhibits nor the evidence show a bill of June 24, 1918. The witness was no doubt referring to the bill of May 24, 1918, about which he had been asked. That repairs to the truck in question had been made or were necessary within a short time after its purchase was competent and relevant evidence for defendant. It was not proper to ask the witness what the charge was for, without identifying it as repairs on the Winther truck in question. The bill itself was the better evidence; that is, if it be conceded that it was for repairs on the particular truck in controversy, and made necessary by reason of its defective or insufficient construction or parts. The defendant, having

testified that the "rear system of this truck broke down," and that it was sent to. plaintiff's place of business to have parts replaced, was asked:

"How long was it laid up then?" "Do you know what the reasonable market value of the use of that truck was at that time?" "How long was it made necessary that it should remain idle at that time by the necessity of these repairs?"

To each question objection was sustained and exception reserved. The answers sought could but tend to confuse the issue presented. However, the witness testified that after the truck was repaired and the rear system renewed, "it gave service for awhile, but it would be impossible for me to say how long; there was so much repairing; she would run a little while and break down; I do not know the details." Witness was then asked what the reasonable market value of the truck was in the condition it was delivered to the defendant and at the time he purchased it, and replied, "I paid $4,100 for it," and was permitted to answer the question, "What it was worth" as, "$2,000 would be a big price for it." Thus he stated that the measure of his damages was the difference in the reasonable market value of the truck with and without the defects or qualities represented. Bessemer Ice Del. Co. v. Brannen, 138 Ala. 157, 163, 35 South. 56; Moulthrop & Stevens v. Hyett & Smith, 105 Ala. 493, 496, 17 South. 32, 53 Am. St. Rep. 139; Lawton v. Ricketts, 104 Ala. 430, 436, 16 South. 59; Reed Lbr. Co. v. Lewis, 94 Ala. 626, 628, 10 South. 333.

[7] The custom of defendant's business on delivering an order for coal, ."for one of those slips to go out with it," was competent to explain plaintiff's insistence that it frequently happened in the conduct of the business that the trucks (including that made the basis of this suit) hauling the coal were overloaded, and that this fact was known to defendant. Such slips indicating weights, etc., of coal delivered by defendant on his trucks, being first exhibited to him, showed weights of from 5,400 pounds to 5,570 pounds, and, when considered with the other evidence in the cause, tended to show that defendant gave permission or it was his custom to overload or heavily load his two-ton trucks. This was competent evidence for plaintiff. We may observe further of this evidence that defendant testified that he had a system whereby he checked the loading of trucks; that the paper exhibited was in his handwriting and from his place of business, and showed that 5,400 pounds had been hauled on a two-ton truck. Such evidence tended to show that he had knowledge that his trucks were being overloaded in the hauling of coal. Defendant had testified: "The paper handed to me is my writing and it came from my place. Four loads of coal were delivered on that." He

was asked: "Look at that paper to refresh your recollection. That first load of coal delivered, how much did that weigh?" The witness answered: "5,400 pounds." The witness was handed several slips, which were identified as his slips, and was asked by plaintiff: "Did you sell Mobile county any coal in January, 1919?" To this objection was overruled and exception reserved; and he answered in such wise as that no prejudice resulted, saying that he did not remember what was in his books, that his bills showed "there was something billed out" by him to the county, but that he did not know whether the same so billed was delivered, and admitted signing for deliveries to the poor house. Having testified to seeing the truck when it first gave trouble, which he explained "was the little oil affair," and that the machinist did not tell him it was overheated for the lack of oil, he was properly asked, "Didn't he tell you that you didn't have sufficient oil there to operate that car?" referring to the Winther truck in question.

[8] The questions to witness Weinacker, to which objection was made and exception reserved, were properly answered. The witness testified at the instance of the defendant that he had purchased a five-ton Winther truck from plaintiff motorcar company which had given him trouble, that it was traded for a smaller Winther truck which gave trouble, and that witness subsequently bought two other trucks from plaintiff which gave good service. On cross-examination witness stated that he was not familiar with White trucks, though he used to sell them and sold one to the county, and was asked of the White truck sold by him to the county whether it gave satisfaction and if an expert had not come to Mobile and failed to relieve the trouble. The witness replied that he did not know that the truck gave any trouble after it was fixed by the expert and did not recall that the expert failed to relieve the trouble. Witness stated that he operated the White truck himself and was asked, "Did you have trouble with them?" and replied that he did not know of trouble with the White truck while using it. We find no reversible error in this cross-examination of the witness.

[9, 10] Mr. Steele, having testified of the proper care and handling of a two-ton truck, whether of the White, Packard, Winther, or other high-grade make, and the effect of overloading, was asked:

"What, in your opinion, would be the effect upon a two-ton truck which would get stuck with an overload, and that truck made to pull it out, what would be the effect upon the truck, or the parts of the truck?"

Over defendant's objection and exception he was permitted to answer:

"They are liable to strain the parts in that truck, which would cause dissatisfied owners."

There was no motion to exclude the opinion or observation of the witness or part of the answer which was not responsive, to wit, "which would cause dissatisfied owners"; and no reversible error intervened. The hypothetical question propounded to an expert was within the rule prevailing in this state, that every fact in evidence need not be hypothesized, but only sufficient facts in evidence to fairly justify the formulation of an opinion on the material issue on which the testimony is offered. The form and substance of the question being a matter largely committed to the sound discretion of the trial judge, such questions should not contain elements of fact not shown by the evidence. Miller v. Whittington, 202 Ala. 406, 410, 80 South. 499; Parrish v. State, 139 Ala. 16, 43, 36 South. 1012; Long D. Tel. Co. v. Schmidt, 157 Ala. 391, 47 South. 731; B. R., L. & P. Co. v. Fisher, 173 Ala. 623, 627, 55 South. 995; Morrissett v. Wood, 123 Ala. 384, 391, 26 South. 307, 82 Am. St. Rep. 127; South. Bitulithic Co. v. Perrine, 191 Ala. 411, 418, 67 South. 601; Briggs v. B. R., L. & P. Co., 194 Ala. 273, 69 South. 926; Pullman Co. v. Meyer, 195 Ala. 397, 401, 402, 70 South. 763; Wilson v. State, 195 Ala. 675, 71 South. 115; Hamilton v. Cranford Merc. Co., 201 Ala. 403, 406, 78 South. 401. Several of the witnesses had testified of the effect of overloading the truck in question and of other makes of trucks and requiring the same to carry such load; and one or more witnesses had given evidence tending to show that on one occasion this truck was "stuck * * * because of overload," and that with a load between 4,000 and 5,570 pounds the truck was stuck on its way to the poor house. In the light of such evidence, and its reasonable tendencies, the conclusion sought of the witness, who had qualified, was proper and competent evidence and within the issues made by the pleading.

[11] The statutes are that the rate of interest upon a loan or for a time of forbearance is $8 upon $100 for one year, and at that rate on a greater or less sum or for a longer or shorter time, and that all contracts for the payment of money or other things, or for the performance of any act or duty, bear interest from the date such money or thing, estimated at its money value, should have been paid, or such act, estimating its compensation in money, performed. Code, §§ 4619, 4620. The evidence shows that the instrument sued on was for a balance of $751.20 on the purchase price of a two-ton truck; the instrument, dated April 18, 1918, being signed by defendant and payable to plaintiff nine months after date, "with interest at 6 per cent." and a reasonable attorney's fee. The bill of exceptions recites that defendant admitted that "15 per cent. on whatever plaintiff recovered, if anything, would be a reasonable attorney's fee." The

verdict returned by the jury (October 9, 1919) and indicated in the minute entry is as follows: "We, the jury, find for the plaintiff the amount of note $751.20, interest $71.35, and attorney's fee 15 per cent. $123.38—total $945.93." Judgment thereon was duly rendered for the total amount thus indicated. Appellant's counsel argues that reversal should be had on the ground that plaintiff's recovery was for more than he was entitled, and submits a calculation totaling only $930.22. To this insistence appellee's counsel say that, "if the court should find that the jury charged too much interest, there is no objection on the part of the appellee that the judgment should be corrected." This is no concession by appellee's counsel that the verdict was contrary to the facts and law governing the allowance of interest from the date of the execution of the note to that of the trial.

[12] If interest be calculated at the conventional rate of 6 per cent. from the date of the note to its due date, and thereafter at the same rate to the date of the judgment, the total amount of recovery (with attorney's fee) would have been $940.33. Therefore, if this be the correct calculation, there would be error in the verdict and judgment for an amount in excess thereof, to wit, $945.93. If, however, interest be calculated at 6 per cent. (for the nine months) to the due date of the note, and from and after default in payment to the date of trial at 8 per cent. (with the 15 per cent. agreed upon as a reasonable attorney's fee), the verdict and judgment of October 9, 1919, should have been for a total of $952.85. Unless there is an agreement to the contrary, interest attaches as an incident to a debt or money demand, as contradistinguished from mere damages for the breach of a contract, from the time of its maturity or when payment is due or may be demanded. Hollingsworth & Co. v. Hammond, 30 Ala. 668; Whitworth v. Hart, 22 Ala. 343, 360; Cheek v. Waldrum, 25 Ala. 152; Waring v. Henry, 30 Ala. 721; Shields v. Henry, 31 Ala. 53; Neel v. Clay, 48 Ala. 252; Tarleton v. Goldthwaite, 23 Ala. 346, 58 Am. Dec. 296; Ex parte Reavis, 50 Ala. 210; Flinn v. Barber, 64 Ala. 193; Park v. Wiley, 67 Ala. 310; State v. Lott, 69 Ala. 147; Campbell Printing Press Co. v. Jones, 79 Ala. 475; Bank v. McDonnell, 92 Ala. 387, 9 South. 149; Ala. City, G. & A. Ry. Co. v. City of Gadsden, 185 Ala. 263, 64 South. 91, Ann. Cas. 1916C, 573.

In his work on Interest Mr. Perley says that in the United States the legal rate is always allowed unless the "parties agree what the rate shall be after maturity of the claim, which they can do if they please," within statutory limitations as to usury; that the conventional rate per cent. is that expressly agreed upon by parties to a contract, be it more or less than the legal rate,

and, if it is not usurious or unconscionable, the law is inclined to enforce the conventional rather than the legal rate when the contract clearly shows that it existed and what it is. Perley's Law of Interest, p. 154. See general authorities; 22 Cyc. 1475, 1495, 1530, 1538; 8 Cyc. 305, 313; 8 C. J. § 1427, p. 1096; 3 R. C. L. § 88, p. 900; 15 R. C. L. § 20, p. 22; 6 Am. Dec. 190, 191; 47 Am. Rep. 71; 33 Am. St. Rep. 634. Two lines of decisions are to be found in the books where specified rates have been reserved: (1) Where a conventional rate of interest has been stipulated for before maturity, the instrument will draw the legal rate, and not the conventional after maturity, unless the contract provides in terms that the special rate shall continue after maturity; (2) the instrument will continue to bear the conventional rate of interest after maturity even in the absence of a specific stipulation to that effect. 22 Cyc. 1532; 1 Sutherland on Damages, p. 950 et seq.; 8 Cyc. 305; 8 C. J. 1096; 3 R. C. L. p. 900, § 88. However, our court has adhered to the view that the conventional rate of interest reserved before maturity will not apply after maturity, but that the instrument will draw the legal rate until paid; that is, unless the terms of the instrument clearly imply that the special rate was intended to continue after maturity. Henry v. Thompson, Minor, 209; Ellis v. Bibb, 2 Stew. 63; Lester v. Bank of Mobile, 7 Ala. 490; Kitchen v. Bank, 14 Ala. 233. The reason for the holding in Branch Bank at Montgomery v. Harrison, 1 Ala. 9, supports the foregoing; it being of statutory requirement that notes given in payment for the purchase of sixteenths section lands carry interest at the rate of 6 per cent. per annum until paid or until judgment. There was no room for ambiguity or doubt that the general legal rate of interest obtaining in this state did not apply to such a contract of sale. This case was cited with approval in the Kitchen and Ellis Cases, supra. The same rule was declared by the Supreme Court of the United States in Holden v. Savings & Trust Co., 100 U. S. 73, 25 L. Ed. 567. For analogous decisions sustaining stipulations for a higher (and a lawful) rate of interest after maturity, see Nat. Life Ins. Co. v. Hale, 54 Okl. 600, 154 Pac. 536, L. R. A. 1916E, 721, 728, et seq.

[13] Since the parties' did not stipulate in the contract for the special rate of 6 per cent. "until paid" (Campbell P. & M. Co. v. Jones, 79 Ala. 475; 1 Sutherland on Damages [4th Ed.] 967), the contract as to a conventional rate of interest of 6 per cent. was not binding after maturity; thereafter the legal rate obtained. The verdict of the jury being for an amount less than the principal with the conventional rate of interest to the time of maturity, the legal rate thereafter to the time of the trial, and the amount agreed upon as a reasonable attorney's fee, there was no prejudicial error in the amount of the judgment. It is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.