## Sloss-Sheffield S. & I. Co. *v.* Prosch, *et al.*

### *Injury from Explosion.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 516.)

1. *Explosives; Injury; Care in Storage.*—Where a defendant in quarrying is under the necessity of using dynamite, the law casts the duty on him to keep, handle and use it in a reasonably safe and careful manner.

2. *Negligence; Allegation of.*—Where the duty of defendant to act is shown, the negligent performance of that duty may be alleged in the complaint in the most general terms, in actions in tort.

3. *Explosives; Care Required.*—Where the defendant operating iron and smelting furnaces and quarrying rock, kept a large quantity of dynamite near and in dangerous proximity to a thickly settled community, in a building or magazine situated close to a railroad track operated by it, and close to large slag piles, where hot slag was deposited by it, and where the hot slag was carried from the furnaces by engines hauling hot pots containing slag close by the explosives, defendant was prima facie guilty of maintaining a nuisance.

4. *Explosives; Pleading.*—A count alleging that defendant stored dynamite in or near said town, and also that it was in near proximity to many persons and buildings, sufficiently alleged the danger.

5. *Nuisance; Explosive; Negligence.*—Although the manner of such keeping is characterized by no special negligence, yet one who keeps stored indefinitely in a thickly settled neighborhood large amounts of high explosives, such as dynamite, which is liable to explode and do serious injury to surrounding persons and property, maintains a nuisance.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by Louis Prosch and others against the Sloss-Sheffield Steel & Iron Company, for damages to plaintiff's residence by the explosion of dynamite. Judgment for plaintiffs, and defendant appeals. Affirmed.

The following are the counts of the complaint directed to be set out:

(1) Plaintiff claims of defendant $5,000 damages, because he says that on, to wit, May 2, 1906, defendant was engaged in operating certain stone quarries at North Birmingham, Ala., to wit, at Twenty-Fourth avenue and Twenty-Third street, and defendant, in the course of its operations of said mines, did use quantities of dynamite, powder and other dangerous explosives, and it thereupon became and was the duty of defendant to keep, handle, and use said explosives in a reasonably safe and careful manner. Plaintiff alleges that defendant wholly failed in its said duty, and negligently and carelessly stored large quantities of said explosives in a dangerous place in the said town of North Birmingham, where, by reason of its being so negligently and carelessly stored in such dangerous and improper place, the same exploded on, to wit, the day aforesaid, and as a result of the said explosion a certain residence owned by plaintiff in the said town of North Birmingham was wrecked and shattered, and the plastering thereof loosened and broken and caused to fall off, and windows and glass fronts were broken and shattered, and the walls were cracked and weakened, and the chimneys were shattered and cracked and broken, so that plaintiff had been caused great expense for repairs, and that said building has been permanently injured, so that it cannot be restored to its original

condition without entire rebuilding, all to plaintiff's damage in the sum of $5,000 as aforesaid.

(3) Plaintiff claims of defendant the further sum of $5,000 damages because he says that on, to wit, the day aforesaid, plaintiff was the owner of a certain residence situated in North Birmingham, Ala., which is a thickly settled community and a legally incorporated municipality, and on, to wit, the day aforesaid, defendant, which is a corporation engaged in operating iron smelting furnaces, and also engaged in quarrying large quantities of rock, within the city limits of said North Birmingham, for its use in said furnaces, had negligently deposited or stored at, to wit, Twenty-Fourth avenue and Twenty-Third street, in said North Birmingham, a large quantity of dynamite and powder for its use in said quarrying, and on, to wit, the day aforesaid, the said explosives were stored in large quantities in a certain magazine or house that was used by defendant for keeping the same, and, by reason of defendant's said negligence, an explosion thereof occurred, which shattered and wrecked said residence owned by plaintiff, the plastering thereof was loosened and broken and caused to fall off, the windows and glass fronts were shattered and broken, and the chimneys were cracked, broken, and shattered, so that plaintiff has been put to great expense for repairs, and the said building has been permanently injured, so that same cannot be restored to its original condition without entire rebuilding, all to plaintiff's damage, as aforesaid, in the sum of $5,000.

(5) Plaintiff claims of defendant $5,000 damages because he says that on, to wit, May 2, 1906, defendant was engaged in operating a stone quarry in or near the town of North Birmingham, and had stored in a certain magazine or warehouse owned by it, in or near

the town of North Birmingham, a large quantity of
dynamite and other dangerous explosives, which were
liable to explode with a force beyond any human agen-
cy to control or power to resist. And plaintiff alleges
that defendant's servants or employees then and there
in charge of said explosives were negligent in the man-
ner of keeping said explosives in that the same were
stored or kept in a place where the surrounding condi-
tions were such that said explosives would probably ex-
plode.

(6) Plaintiff claims of defendant the further sum of
$5,000 damages because he says that on, to wit, May
2, 1906, the defendant was operating a stone quarry in
or near the town of North Birmingham, and in operating
said quarry used large quantities of dynamite and other
explosives, and plaintiff alleges that defendant kept
large quantities of dynamite in a small wooden build-
ing in or near said town and in near proximity to many
buildings and persons whose property and lives would
be in danger by an explosion of said dynamite and
other explosives. And plaintiff alleges that said explo-
sive known as dynamite is of a chemical composition,
such as render probable an explosion thereof without
any extraneous cause as a result of its composition or
some chemical change therein with such violence as to
endanger the lives and property of persons in the vicin-
ity. And plaintiff alleges the defendant's agents, serv-
ants, or employees then and there in charge of said
quarry and magazine, well knowing the fact that dyna-
mite was an explosive of such nature as aforesaid, did
negligently keep a large quantity of said explosive in
said magazine, in excess of what was necessary for the
operation of its said quarry, in a small wooden build-
ing in or near the town of North Birmingham, well
knowing that, in the event of an explosion of said dyna-

mite, the property and lives of persons residing in the vicinity of said magazine would be in danger. And plaintiff alleges that the said dynamite did explode on, to wit, the day aforesaid, with such violence that a certain house or residence owned by plaintiff, and in which he was at that time residing, was greatly shattered and broken, and the plastering loosened and broken, and windows and glass shattered, and walls and chimneys shattered, and was partly removed from its foundations, and the furniture and carpets were broken, defaced and damaged, and plaintiff was put to great expense in and about repairing said house or residence and contents, and said house or residence has been permanently damaged, all to plaintiff's damage in the sum of $5,000, as aforesaid. The house referred to is the same as in the original complaint.

(9) Plaintiff claims of defendant the further sum of $5,000 damages because he says that on, to wit, May 2, 1906, defendant was operating a stone quarry in or near the town of North Birmingham, and in operating said quarry used large quantities of dynamite and other explosives, and plaintiff alleges that defendant kept large quantities of dynamite in a small wooden building in or near the corporate limits of said town, and in near proximity to many buildings and persons whose property and lives would be in danger by an explosion of said dynamite and other explosives. And plaintiff alleges that said explosive known as dynamite is of a kind known that will probably explode without any cause known to experts in dynamite and such will with such violence as to endanger the lives and property of persons in the vicinity. And plaintiff alleges that defendant's agents or servants then and there in charge of said quarry or magazine, well knowing the facts that dynamite was an explosive of such nature, and that it

will probably explode without any such aforesaid known cause, did negligently keep a large quantity of said explosive in said magazine, which was a small wooden building, in or near the town of North Birmingham, well knowing that, in the event of an explosion of said dynamite the property and lives of persons residing in the vicinity of said magazine would be in danger. And plaintiff alleges that the said dynamite did explode on, to wit, the day aforesaid, with such violence that a certain house or residence owned by plaintiff was greatly shattered and broken, and the plastering loosened and broken, and windows and glass shattered, and walls and chimneys shattered, and was partly removed from its foundations, and the furniture and carpets were broken, defaced, and damaged, and plaintiff was put to great expense in and about repairing said house and residence, and contents, and said house or residence has been permanently damaged, all to plaintiff's damage in the sum of $5,000, as aforesaid. The house referred to in this count is the same house referred to in the original complaint filed in this cause.

(13) Plaintiff claims of defendants $5,000 as damages because they say that on, to wit, May 2, 1906, defendant was engaged in operating a stone quarry in or near the town of North Birmingham, and had stored in a certain magazine or warehouse owned by it, in said town, a large quantity of dynamite, to wit, 650 pounds, which dynamite was liable to explode with a force beyond human agency to control or to resist. And plaintiffs allege that the said quantity of explosive was kept by the defendant, as stated, in a thickly settled portion of the town of North Birmingham, where there were in proximity many buildings and persons, and where the said explosive was liable to explode and do injury

to such persons or property. And plaintiffs allege that on, to wit, the day aforesaid, the said dynamite so kept by defendant in said house did explode, and as a result of said explosion a certain house owned by plaintiff in the said town of North Birmingham was wrecked and shattered, and the plastering thereof shattered and broken, and the windows and glass were broken, and the walls and chimneys were shattered and broken, and the said building was partly thrown from its foundations, and said building has been permanently injured, and the furniture, carpets, and other contents of said building were damaged as a consequence of said explosion, which said building was located at the time of said explosion a long distance from where said explosion occurred, to wit, 1,000 feet, and which said house or building is the same house referred to in the original complaint in this case.

(14) Plaintiffs claim of defendant the further sum of $5,000 as damages, because they say that on, to wit, May 2, 1906, the defendant had a large quantity, to wit, 650 pounds, of dynamite stored in a building located in the town of North Birmingham in said state and county, and in near proximity to many buildings and persons whose property and lives would be in danger by an explosion of said dynamite. And plaintiffs allege that said explosive know as dynamite is of a chemical composition, such as renders probable an explosion thereof without any extraneous cause with such violence as to endanger the lives and property of persons in the vicinity. And plaintiffs allege that defendant's agents, servants, or employees then and there in charge of said dynamite or building containing said dynamite, well knowing the fact that dynamite was an explosive of such nature as aforesaid, did negligently keep a large quantity, to wit, 650 pounds, of said ex-

plosive in said magazine in a small wooden building in said town, and about 1,000 feet from a house belonging to plaintiffs and located in said town, and that on, to wit, the day aforesaid, the dynamite did explode with such violence that said house belonging to said plaintiffs, and in which they were at that time engaged in business, was greatly broken, shattered, and injured, and the furniture and fixtures and stock of goods therein were damaged, and plaintiffs were put to great expense in and about repairing said house, all to their damage in the sum aforesaid, and plaintiffs alleged that said house is the same house heretofore described and referred to in the original complaint in this case.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant.

HALEY & HALEY, and T. M. BRADLEY, JR., for appellee.

DE GRAFFENRIED, J.—The questions presented to us by this record challenge the sufficiency of certain counts of the appellees' complaint, when tested on demurrer. The questions presented are of importance, and for that reason the reporter will set out, in his report of this case, counts 1, 3, 5, 6, 9, 13, and 14. The counts referred to will, when read in connection with this opinion, illustrate its full meaning.

(1, 2) 1. Dynamite is, in its nature, a powerful explosive. Its value rests exclusively in that one quality, and if it be true that the appellant, in quarrying, was under the necessity of using dynamite, powder, and other dangerous explosives, the law cast the duty upon the appellant "to keep, handle, and use said explosives in a reasonably safe and careful manner." This propo-

sition is recognized as sound in all the cases.—*Whaley v. Sloss-Sheffield Steel & Iron Co.,* 164 Ala. 216, 51 South. 419, 20 Ann. Cas. 822; *Kinney v. Koopman & Gerdes,* 116 Ala. 310, 22 South. 593, 37 L. R. A. 497, 67 Am. St. Rep. 119; *Rudder v. Koopman & Gerdes,* 116 Ala. 332, 22 South. 601, 37 L. R. A. 489; *Judson, Ex'r, v. Giant Powder Co.,* 107 Cal. 549, 40 Pac. 1020, 29 L. R. A. 718, 48 Am. St. Rep. 146. In actions of tort, when, in the complaint, the duty to act is shown, the negligent performance of that duty may be alleged in the complaint in the most general terms.—*Sou. Ry. Co. v. Burgess,* 143 Ala. 364, 42 South. 35. The first and fifth counts were sufficient.

(3) 2. If the defendant was engaged in operating iron smelting furnaces, and was also engaged in quarrying rock, and if, near and in dangerous proximity to a thickly settled community, it kept stored in a building or magazine, situated, as is alleged in the third count of the complaint, close to "a certain railroad track owned and operated by defendant, and close to certain large slag piles, where hot slag was deposited by defendant, in the course of its operations of said furnaces, and where hot slag was carried from defendant's furnaces close by said explosives by engines hauling hot pots containing slag, "a large quantity of dynamite powder," the defendant was certainly prima facie guilty of maintaining a nuisance. Human experience indicates that where large quantities of such explosives, as dynamite and powder, are stored in isolated places and are carefully guarded by persons of skill, explosions, from unforeseen and unknown causes, sometimes occur, and, if the defendant selected the place named in the complaint for its magazine or house in which to keep stored large quantities of dynamite and powder, it selected a place where such an explosion as the

one described in the complaint might reasonably be expected to occur. The reason which underlies some of the cases cited in *Kinney v. Koopman & Gerdes, supra,* and *Budder v. Koopman & Gerdes, supra,* in which the courts held that, under certain conditions, a person who kept high explosives stored in a city or town was not necessarily guilty of maintaining a nuisance, cannot be applied to the conditions which are shown by this complaint to have surrounded the house or magazine in which the plaintiff charges that the defendant kept its dynamite and powder stored.

Out of respect to necessity, public and private, electricity and steam, which are also dangerous agencies, are in constant use in our cities, towns, and villages and upon our public highways. The use of these agencies entails upon human life and property some modicum of danger which human skill and foresight cannot prevent, and which must be traced to inevitable accident. These dangers, inherent in the most careful use of such agencies, must be submitted to "in order that the greater good of the public be conserved and promoted." The care with which the law requires the conductors of electricity to be insulated and placed beyond the reach of the average man in his customary use of our streets and highways, and the care which the law exacts of those who use steam power to maintain properly constructed, equipped, and inspected engines, are indications of the rigid adherence by the law to that salutary declaration of the law that, to use the language of Chief Justice Stone, "there is a limit to this duty (on the part of the citizen) to yield, to this claim and right to expect and demand. * * * 'Sic utere tuo,' in such conditions, is enjoined by social obligations and by law."—*Tennessee Coal, Iron & Rail-*

*road Co. v. Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48.

It may be that it is possible for a magazine for the storage of large quantities of dynamite and powder to be so constructed and operated, at places similar to that described in the complaint, as to render it probably not more dangerous to surrounding property and to the lives of human beings than a similar magazine would be situated in a place not so exposed, but, if so, the defendant has the burden of so showing. Presumptively there was inherent danger in the place mentioned in the complaint.

"Presumptions arise from the doctrine of probabilities. The future is measured by the past, and presumptions are created from the experience of the past. What has happended in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown."—*Judson v. Giant Powder Co., supra.*

That the defendant was unfortunate in the selection of the place for its magazine we think is most obvious, and we unhesitatingly hold that the third count of the complaint was free from demurrer.

3. What we have said disposes of the assignments of error based upon the action of the court below in overruling the demurrer to the second count of the complaint.

4. In the above case of *Kinney v. Koopman & Gerdes,* this court, through Coleman, J., said: "We are of the opinion that a count prima facie sufficiently shows a want of due care, which charges the storing of large quantities of gunpowder in a wooden building in a populous place in the city of Cullman."

In the above case of *Rudder v. Koopman & Gerdes,* this court, through Head, J., said: "The defendants

kept, in a wooden store, in a thickly settled portion of
the incorporated town of Cullman, where there were,
in proximity, many buildings and persons, large quan-
tities of dynamite and gunpo,wder, liable to explode and
do serious injury to such persons or property. It did
explode, by the burning of the house in which it was
kept, with such force and violence as to cast fire brands
several hundred feet, and destroy the property of the
plaintiff. Under proof of these facts, the defendants
are responsible."

(4) While in count 6 the plaintiff alleges that the
wooden building in which the explosives were stored
was "in or near said town," it also alleges that it was
"in near proximity to many buildings and persons,"
etc. The reason, therefore, of the rule which was de-
clared by Mr. Justice Coleman in *Kinney v. Koopman
& Gerdes, supra,* and by Mr. Justice Head in *Rudder
v. Koopman & Gerdes, supra,* applies to count 6. For
this reason, as well as for the reasons set out in sec-
tion 1 of this opinion, count 6 was free from demurrer.

5. We see but little substantial difference between
count 6 and counts 9, 10, 11, and 12. They come direct-
ly within the reason of the rules above announced, and
the demurrers to these counts were properly overruled.

(5) 6. The question presented by the demurrers to
counts 13 and 14 is simply this: Is a person, under the
law, guilty of maintaining a nuisance, who keeps stored
indefinitely, in a thickly settled neighborhood, large
amounts of high explosives, which are liable, as dyna-
mite is liable, to explode and do serious injury to sur-
rounding persons and property, provided the manner of
such keeping is characterized by no special negligence?

While there are expressions in some of our older cases
(see *Kinney v. Koopman & Gerdes, supra; Rudder v.
Koopman & Gerdes, supra; Collins v. A. G. S. R. R. Co.,*

104 Ala. 390, 16 South. 140), which may indicate a contrary view, we are of the opinion that such a keeping is in fact and in law a nuisance. Lord Holt was right. He spoke in the interest of human life and human repose and the rights of private property when he said: "Though gunpowder be a necessary thing and for the defense of the kingdom, yet, if it be kept in such a place as is dangerous to the inhabitants or passengers, it will be a nuisance."

When Lord Holt made use of the above expression, the explosive force of gunpowder was, in comparison with the force of modern explosives, as was the speed of a then sailing vessel to the speed of a modern hydroplane. While modern methods of preserving these high explosives have probably improved, we are inclined to believe that many of the opinions of common-law judges on the subject now in hand would never have found their way into the books, if, when they delivered those opinions, explosives had possessed those highly dangerous qualities which now belong to them. A modern bomb possesses, probably, as much explosive force as anciently belonged to a barrel of gunpowder, and, in applying the rules of the common law to present conditions, we must not lose sight of the real reasons which underlie those rules and apply them in accordance with their purpose rather than in accordance with their mere letter. We direct attention to the wording of the rule as we deduce it from what we regard as the sound declaration of our own cases on the subject and from what we regard as the rule which has been declared by the best adjudicated cases in other states, viz: That he who keeps stored, indefinitely, in a thickly settled neighborhood, large amounts of high explosives which are liable, as dynamite or gunpowder or other high explosives are liable, to explode and do serious injury to surrounding persons

and property, is guilty of maintaining a nuisance, although the manner of such keeping is characterized by no special negligence. This is certainly the holding in *Rudder v. Koopman & Gerdes, supra,* and, as there seems to be doubt upon the subject, we might as well now definitely declare the rule. This rule, by its terms, excludes the idea that, if explosives are not kept in such large quantities in a thickly settled community as to do serious injury to surrounding persons and property if they explode or if they, although in such large quantities, are not kept indefinitely in such community, such a keeping is a nuisance. In such instances, for the man, who keeps or has such explosives temporarily in his possession, to-be held liable for injuries resulting from their explosion, there must be shown, to use the language of this court in *Rudder v. Koopman & Gerdes, supra,* "some special negligence in the manner of keeping them."

It may be that the storage for indefinite periods of large quantities of high explosives in a thickly settled community would be more convenient to their owner than to keep them stored elsewhere. It may be that a requirement that he shall keep such a place of deposit at a point which subjects the public to less danger in the event of an explosion will entail upon him some inconvenience and expense in keeping supplied, at his place of business, with his usual needs. The needs of the individual must give way to the higher demands of the public for protection against all needless possible, not probable, sources of danger in their lives and in their property. It is the public demand, not the mere private need, for electric lights, electric cars, telephone and telegraph lines, which justifies, in the sight of the law, the imposition upon any human being of the slight modicum of danger which is attendant upon the maintenance of electric conductors upon our streets and upon our highways. The law should be as careful in conserving the

[Sloss-Sheffield S. & I. Co. v. Prosch, et al.]

rights of the public in the perfect security of their lives and property as are business men when they go about making their investments. We hardly think a business man would run the risk of placing a handsome edifice by the side of a magazine filled with high explosives if he could find some other convenient place to build it, or that he would be likely to take such a place as a place of residence for himself and family. When the public good requires the use of a particular force which possesses inherent danger to the public, the law will, under appropriate safeguards, permit its use, although it may, now and then, cause, by inevitable accident attendant upon its use, loss of life or property. It will not, however, to suit the mere convenience of a private individual, permit him to keep that which, because of its dangerous qualities, is fraught, in the mere keeping, with grave possible dangers to the property and people of a town or city, indefinitely in a place where, if an explosion occurs, the public will be the sufferers. If the business of the private individual is such as to require the use of dangerous utilities, the law, to meet the requirements of his business permits him, under restrictions, to use such utilities, but it will not permit him to add even a possible danger to the lives and property of the public by keeping indefinitely, for convenience merely, large quantities of high explosives in such a place as that, if an explosion occurs, property and human life will probably be destroyed.—*Rudder v. Koopman & Gerdes, supra.*

In our opinion counts 13 and 14 were not subject to demurrer, and the judgment of the trial court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.