(78 South. 401)

HAMILTON v. CRANFORD MERCANTILE
CO. (6 Div. 419.)

(Supreme Court of Alabama. March 23, 1918.

On Rehearing, April 15, 1918.)

1. EVIDENCE ⬤⟿498½, 546 — OPINION EVI-
DENCE—DISCRETION OF COURT.

The determination of the qualification of a
witness to give an expert opinion, or an opinion
not expert by one sufficiently informed to have
an opinion, is a preliminary inquiry, resting in
the sound discretion of the court, under the
evidence.

2. EVIDENCE ⬤⟿553(2)—HYPOTHETICAL QUES-
TIONS.

A hypothetical question, containing facts
not shown in the evidence, is objectionable, yet
a questioner may omit evidence which does not
conform to his theory, but sufficient facts must
be included to justify an opinion on a material
issue.

3. EVIDENCE ⬤⟿553(1)—EXPERTS—HYPOTHET-
ICAL QUESTIONS.

The frame and substance of hypothetical
questions is a matter largely committed to the
discretion of the court.

4. EVIDENCE ⬤⟿501(1) — OPINION EVIDENCE
BY NONEXPERTS.

A fireman, not an expert, may give an opin-
ion as to length and duration of a fire and
chances of saving a building in the absence of
an explosion of dynamite, where he is examined
as to facts on which he bases his opinion.

5. APPEAL AND ERROR ⬤⟿1058(2)—CURING OF
ERROR—EXCLUSION OF EVIDENCE.

Erroneous exclusion of evidence was cured
by subsequent admission of evidence of the wit-
ness covering the subject of the question.

6. APPEAL AND ERROR ⬤⟿738—MATTERS RE-
VIEWABLE—JOINT ASSIGNMENTS.

Where assignment covered sustaining of ob-
jections to two questions to a witness, one of
which was previously answered, the assignment
cannot avail as to the other.

7. EVIDENCE ⬤⟿144 — MATERIALITY — CER-
TAINTY.

A question whether it was "possible" for a
building to burn completely down without burn-
ing another 10 or 20 feet away did not call
for an answer of any value to the jury, and
there was no error in sustaining an objection
thereto.

8. APPEAL AND ERROR ⬤⟿1058(1)—HARMLESS
ERROR—EXCLUSION OF EVIDENCE.

Sustaining of objection to questions calling
for testimony already substantially given was
harmless.

9. WITNESSES ⬤⟿372(2) — CROSS-EXAMINA-
TION—CREDIBILITY.

It was proper to ask witnesses for plaintiff
as to whether defendant had not sued them and
had turned off'their water, as bearing on their
credibility.

10. APPEAL AND ERROR ⬤⟿1052(5) — HARM-
LESS ERROR—EVIDENCE.

In action to recover damages to property,
rulings on admission of evidence concerning val-
ue of the property cannot be made the basis of
reversal, where the verdict was against plain-
tiff's right to recover at all.

11. WITNESSES ⬤⟿379(2) — STATEMENTS OUT
OF COURT.

In action to recover damages for loss of
property, statements made by plaintiff out of
court as to value were admissible as bearing on
credibility of plaintiff's testimony as to value.

12. EXPLOSIVES ⬤⟿8—NEGLIGENT KEEPING—
MATERIALITY OF EVIDENCE.

In action for damages by fire alleged to have
been caused by neighboring explosion, evidence

as to condition of basement when cleaned out
months after the fire, after the weather had its
effect, was admissible; its weight being for the
jury.

13. EXPLOSIVES ⬤⟿8—NEGLIGENT KEEPING—
MATERIALITY OF EVIDENCE.

In action for damages by fire alleged to have
been caused by an explosion in another build-
ing, it was immaterial that defendant had stored
dynamite in his building two years before.

14. EVIDENCE ⬤⟿314(5)—HEARSAY.

Testimony of one who saw a fire was not
rendered hearsay by the fact that· he testified
that his attention was called to it by the remark
of another.

15. WITNESSES ⬤⟿414(2)—CORROBORATION.

In action for damages alleged to have been
caused by an explosion, it was error for a wit-
ness in charge of defendant's building to relate
a conversation he had with another to corro-
borate himself that there was less than 50
pounds of dynamite in defendant's building.

16. EVIDENCE ⬤⟿116—RELEVANCY.

Where witness for plaintiff, testifying as to
dynamite in defendant's building, stated that
he had gone there to buy cement, it was proper
for defendant to testify as to when plaintiff's
witness was there and when he had sold him
cement; the question being as to the amount of
dynamite on hand at the time of an explosion.

17. EXPLOSIVES ⬤⟿8—KEEPING ON HAND—
NEGLIGENCE.

Where dynamite was only stored temporari-
ly in a warehouse, recovery could not be had
for damages done to an adjoining building, un-
less there was some special negligence in the
manner of keeping it.

18. TRIAL ⬤⟿251(3)—ISSUES—INSTRUCTIONS.

Where paramount issue in case was total de-
struction of entire stock of goods of plaintiff,
it was not reversible error that the instructions
did not discriminate between a partial and total
destruction.

19. EXPLOSIVES ⬤⟿8—CAUSING FIRE—PROX-
IMATE CAUSE—BURDEN OF PROOF.

Where plaintiff claimed that an explosion of
dynamite in another burning building was the
cause of the burning of his building, the burden
was on him to prove that the explosion was the
proximate cause.

20. TRIAL ⬤⟿256(4)—INSTRUCTIONS—NECES-
SITY OF REQUESTS.

An instruction that the burden was "not on
defendant. to acquit itself of negligence," al-
though misleading, was not reversible, where
plaintiff did not request an explanatory instruc-
tion that plaintiff did not still bear the burden
of proof where he had made out a prima facie
case.

21. TRIAL ⬤⟿234(1)—INSTRUCTIONS—DIRECT-
ING VERDICT.

In action for damages to goods for alleged
negligence of defendant, it was proper to in-
struct that plaintiff could not recover if the
jury were unable to say that they were reason-
ably satisfied what caused the damage.

22. APPEAL AND ERROR ⬤⟿1064((1) — HARM-
LESS ERROR—INSTRUCTIONS.

In negligence case it was improper, but not
reversible error, to instruct that, if the jury was
not reasonably satisfied as to the cause of the
damage, to return a verdict "in favor of the
defendant."

23. EXPLOSIVES ⬤⟿8—PROXIMATE CAUSE—IN-
STRUCTIONS.

Where plaintiff claimed damage by fire was
caused by an explosion in defendant's building,
an instruction that, if an explosion in plaintiff's
building caused or "proximately contributed" to
the burning of his property, to find for defend-
ant was not affirmatively bad, but was mislead-
ing and inaccurate.

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Rehearing.

24. APPEAL AND ERROR ⬡═══1078(1)—MATTERS REVIEWABLE—WAIVER OF ASSIGNMENTS.

Where assignments of error were not insisted upon in the original brief, they were waived, and were not revived by being urged in a supplemental brief subsequent to submission of the appeal.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by S. Hamilton against the Cranford Mercantile Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The following assignment of errors are referred to in the opinion:

(9) The court erred in permitting defendant's attorney, over the objection of plaintiff, to ask witness Lee Palmer the following questions: "What contingency and difficulty do you sometimes have in fighting fires?" And: "What other contingencies do you have?"

(10) Question to same witness: "You have to figure on the water pressure, whether it is good, and whether it continues during the fire fight?"

(11) In permitting the following question: "And also on the contingency of a breakage in the fire hose, and the men getting there to fight the fire?"

(12) Also the following question: "Is it a fact some time that the water pressure is good in the beginning, but gives out and weakens?"

(13) In sustaining defendant's objection to the following question to same witness: "It is possible for this warehouse of Cranford's to have burned to the ground, it being something like 10 to 20 feet from the Hamilton building, without the Hamilton building catching on fire, in your judgment?" And: "What is your best judgment as to that question, suppose you reach the building, say 25 minutes from the time Cranford's warehouse caught on fire, as to the possibility of having saved the Hamilton building?"

(14) In sustaining defendant's objection to the following question: "Suppose the Cranford warehouse had been on fire for 15 to 25 minutes, from your experience and your knowledge of fighting fire, in your judgment, would it have been possible to save Hamilton's stock of goods from the fire absolutely?" And: "Suppose Hamilton's store and stock of goods had not been on fire, and that there had been no explosion, and the building was intact, in your opinion, could you have saved the stock of goods when the fire department reached there on that occasion?"

(1) The court erred in permitting defendant's attorney to ask the witness Creel (referring to J. H. Cranford): "Your understanding is that he is a large stockholder in the Cranford Mercantile Company?" and in excluding the answer thereto, "Yes, sir."

(2) In permitting defendants in turn to ask the witness if there was not a woman living in one of the houses close to where he lived.

(3) In permitting defendant's attorney to ask the witness if it was not a fact that Mr. Cranford had a suit brought against witness for the First National Bank for a debt witness owed the bank.

(4) Question to the same witness: "I will ask you if you did not know that he directed suit to be brought against you for the amount you owed the bank?"

(5) Question to same witness: "Did you not know that Mr. Cranford was president of the Jasper Water Light & Power Co.?"

(6) Question to same witness: "Did not Mr. Sparks, who is connected with the Jasper Water, Light & Power Company, come to your place about 3 months ago, to cut off your water for nonpayment of water rent, and if you did not state at that time to him that old Jack Cranford was the man behind it, in having your water cut off?"

(7) Question to the same witness: "I will ask you independently if you did not state to Mr. Sparks, at the time you say he came there, that Mr. Jack Cranford was behind it."

(79) Overruling plaintiff's objection to the following question to the witness Sparks: "I will ask you at that time whether or not Creel stated to you in person that old Jack Cranford was behind the trouble."

(18) Overruling plaintiff's objection to the following question to Hamilton: At what time did you make your report for taxes in the year 1914?

(19) Overruling defendant's objection to questions to same witness: "I will ask you to examine this statement here, and to tell the jury at what valuation you returned your goods, wares, and merchandise at that time."

(20) Question to same witness: "For the purpose of refreshing your recollection, I will ask you to look at this and state whether or not you fixed the value at $2,500."

(21) Question to same witness: "I will ask you if you returned this property to Mr. Stubblefield for assessment for taxes the year preceding 1913."

(24) The court erred in refusing to admit Mr. Hamilton's book which had been previously introduced in evidence as Exhibit A (the book having reference to certain cotton alleged to have been burned).

(28) Overruling plaintiff's objection to the following question to the tax assessor (referring to the tax assessment sheets): "Who furnished you that and upon whose information, and upon whose dictation did you enter the same?"

(36) The court also erred in its rulings as follows: "Plaintiff moved the court to exclude the evidence of this witness entirely because it calls for irrelevant, illegal, or immaterial matters, and because no part of the evidence is germane to the issue, since it is the duty of the assessor to fix values, and because it is not shown by this evidence that Hamilton did himelf fix the value of the aforesaid property." In overruling plaintiff's objection to the following question to the witness Pitts: "You spoke of the basement walls spreading out."

(42) Question to same witness: "When you refer to the basement not being disturbed—when you told Mr. Cooner the basement was not disturbed—did you refer to the basement wall, or to the bottom of the basement?"

(43) Overruling plaintiff's objection to the following question to the witness Smith: "You remember when you examined that basement any time prior to the destruction of the building, have occasion to go in there after you built it?"

(44) Question to same witness: "When you rebuilt, what changes did you have to make, and why did you have to make them?"

(47) Question to same witness: "When you went to remove the building, did you find the floor joists—describe the condition you found them in if you recollect; did you find any sills there in the corner?"

(48) In refusing plaintiff's request to exclude all the evidence of this witness with reference to the condition of the floor.

(49) Overruling plaintiff's objection to the following question of the witness Welch: "Did you know anything about whether those walls were plumb and square after they got the concrete wall in and began laying the brick?"

(50) Question to same witness: "Explain to the jury what was out of line."

(51) The court erred in refusing to rule on plaintiff's motion to exclude the following testimony of the witness Smith: "Superintendent Smith gave me my dimensions, 37 feet 6 inches was the width of the front, and I started my

southeast corner that way, and after I plumbed my range line, I found I was 4 inches too short on the foundation of the last wall, being 4 inches over the southeast corner, after I rebuilt again 4 inches south. The concrete just barely received the brickwork, and came flush on the inside."

(71) Erred in sustaining defendant's objection to the following question to witness Kitchens: "Did you keep any dynamite when you were in the building?"

(72) Question to same witness: "I will ask you if while you were in the building, the Cranford Mercantile Company didn't keep dynamite and powder in a little house just adjoining that warehouse."

(74) In overruling plaintiff's objection to the following question to the witness Covin: "State to the jury whether or not immediately after you all walked out on the porch in view of the Hamilton building, she (referring to your daughter) made a statement to you with reference to that building on fire."

(75) In overruling plaintiff's objection to the following question to the witness Guttery: "State any circumstances which cause you to know that fact, and what did you do following that about getting some."

(76) The witness' answer: "When I came in that day, I did not go to Rufus Cranford; I went to Jack Cranford. He was president of the company, over us all, and I asked Mr. Cranford to let me order the dynamite; that we were going to lose the company's business if we did not get it; and he told me to go ahead and buy it, and the next day was shipping day over the Southern Railroad. They had certain days to ship dynamite, and I told him we didn't have time to write, and he told me to telephone the order in, and I did, right there."

(85) Error in the following part of the oral charge of the court: "And yet if the jury should be convinced from the facts and circumstances that the keeping was only temporary, then that would not necessarily be such want of due care in the keeping and handling of them as would authorize a recovery, but the facts must further show some special negligence in the manner of keeping them."

Charge 41 is as follows: "The court charges the jury that before plaintiff is entitled to recover in this action, the following facts must concur: First, defendant must have kept a large quantity of dynamite or other explosive stored in its warehouse at the time of the explosion, or it must have had at such place and time some quantity of such dynamite, or other explosive, contrary to the conduct of a reasonably prudent person; and, second, that such dynamite or other explosive exploded, causing the property of plaintiff to be destroyed; and, third, that plaintiff's stock of goods would not have been destroyed but for such explosion. The burden of proving each and all of these facts to the reasonable satisfaction of the jury rests on plaintiff, and the court charges the jury that, unless all these facts existed, plaintiff is not entitled to recover." This charge was given at the instance of defendant. The following charges were given at defendant's request:

"(22) The court charges the jury that the keeping of 40½ pounds of dynamite in defendant's warehouse at the time of the explosion was not unlawful; and, even if the jury should find that the injuries complained of were the proximate result of the explosion of said amount of dynamite, there can be no recovery in this case by plaintiff, unless the jury are reasonably satisfied from the evidence that defendant was guilty of negligence in keeping dynamite in his warehouse.

"(29) If you find from the evidence that an explosion occurred in the basement of the Vicks building, and that such explosion caused, or proximately contributed to the burning of plaintiff's goods, then the jury should find for defendant."

Finch & Pennington and Ray & Cooner, all of Jasper, for appellant. J. H. Bankhead, Jr., of Jasper, for appellee.

McCLELLAN, J. This is an action for damages, instituted by the appellant against the appellee. It is apparent that the material issues were due to be submitted to the jury for decision. It is so stated in the brief for appellant (plaintiff), against whom the jury determined the issues. The subject of the plaintiff's claim is the value of a stock of merchandise and fixtures; and he set forth his claim in several counts to this effect, viz.: That the defendant negligently handled or stored in violation of law large quantities of dynamite and gunpowder in a wooden warehouse, adjacent to plaintiff's storehouse, in a thickly populated part of the town of Jasper, and that its explosion was the proximate cause of the destruction of plaintiff's stock and fixtures. The defendant pleaded the general issue. All of the errors assigned and argued, upwards of 80 in number, relate to the admission or rejection of evidence and to the instruction of the jury. The only practical way to treat the questions made on the appeal seems to be to consider the assignments as classed and argued for appellant. As extracted from the evidence, the defendant's theories were: That the explosion occurred on the plaintiff's premises, not in the warehouse of the defendant; that the proximate cause of the destruction of plaintiff's property was fire, not the explosion of dynamite or powder, even though about 45 pounds of dynamite did explode in defendant's warehouse when it was consumed by fire that also burned plaintiff's storehouse and another building; that the defendant was not negligent either in the storing or handling of explosives in its warehouse, and did not have therein an excessive quantity (over 50 pounds) stored.

Twenty-six of the assignments, argued together in the brief for appellant, bring into question the action of the court in respect of opinion evidence, admitted for the defendant, touching the relative duration of the fire in the defendant's building and the plaintiff's building, and, also, whether the plaintiff's property could have been saved from destruction by fire regardless of the latterly occurring explosion of dynamite in defendant's warehouse. In Seals v. Edmondson, 71 Ala. 509, 515, this court had occasion to consider the admissibility of nonexpert opinions, given by persons with knowledge of the elements involved in the inquiry upon which their opinions were invited, with respect to the spontaneity and rapidity with which cotton will burn when fire is communicated thereto. There the issue seems to have been whether the cotton was ignited by fireworks which, according to the opinions indicated,

would have caused an immediate conflagration and a rapid destruction of the cotton, or whether it was ignited through the negligence of the warehouseman and was slowly fired and consumed. This court justified the reception of these opinions from informed, but nonexpert, witnesses. Authority for this conclusion was found in 1 Wharton on Ev. § 510; and, we may add, the succeeding sections (511, 512) from that author might well have been also cited in support of this court's holding. This court there said, through Chief Justice Brickell:

"This is the substance of the evidence, and we understand from the recitals in the bill of exceptions that the witnesses had been engaged in the cotton business; that from their employment or pursuits they had peculiar opportunities of observing cotton, its nature and quality, and its liability to catch fire and burn; that cotton is peculiarly combustible. That it is its nature to take fire quickly, and to burn rapidly is a fact to which any witness having knowledge of it may testify. The fact was involved in the evidence we are considering, and, without stating the fact itself, a witness would probably state the inference involved in it. 1 Whart. Ev. § 510. But how far this may be true is not material, for the witnesses were peculiarly conversant with cotton, and with propriety could express an opinion as to its combustibility, and the difficulty of extinguishing fire burning it, as, after examination, they could, if material, have expressed an opinion as to its marketable grade or classification, and consequent value."

Wharton, at section 510, states the rule to be that:

When "the opinion is the mere shorthand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based."

At sections 511, 512, the author affirms, as the result of evident necessity, that nonexpert opinions of informed witnesses are admissible when the only practicable means to adduce testimony of the fact is to permit the informed witness to describe its effect on his mind or to give his opinion on a subject with which he is specially acquainted, but which cannot be specifically described. The doctrine illustrated in Seals v. Edmondson, supra, and defined by Wharton, was recently recognized and applied in Atl. Coast Line Ry. v. Enterprise Oil Co., 74 South. 232, 235,[1] as well as in Birmingham, etc., R. R. Co. v. Williams, 190 Ala. 53, 57, 58, 66 South. 653. Both of these litigants entered upon the contest of the issues indicated by the subjects of the inquiries involved in the opinions sought as before stated. We are unable to conceive of any other means by which to have brought forward evidence to establish or to refute the propositions asserted, so to speak, by these litigants than through opinions of those sufficiently informed to have an opinion in the premises. It was hence entirely proper to qualify such witnesses to form an opinion, and to develop through their examination the conditions and circumstances upon which the opinion was based. It is hardly necessary to add that where such opinions are admissible no offense is committed against the rule that forbids the substitution of a witness' opinion on the issue of fact the jury is called to decide; nor is offense committed against the rule that forbids the introduction of a witness' opinion upon a matter that the jury, in the exercise of common knowledge and experience, is equally competent to consider and form an opinion or conclusion from the facts disclosed by the evidence.

[1] The determination of the qualification of a witness to give an expert opinion, or an opinion not expert, but permissible under the rules before reiterated, is a preliminary inquiry, addressed to the trial court; and its decision is submitted to the sound discretion of the trial court under the evidence bearing upon such inquiry. White v. State, 133 Ala. 122, 32 South. 139; L. & N. R. R. Co. v. Sandlin, 125 Ala. 585, 28 South. 40; Ins. Co. v. Stephens, 51 Ala. 123; Ala. C. & I. Co. v. Heald, 168 Ala. 626, 643, 644, 53 South. 162; L. & N. R. R. Co. v. Elliott, 166 Ala. 419, 52 South. 28; Jones on Ev. 369.

[2, 3] While an hypothetical question propounded to an expert on his examination in chief is objectionable if it contains elements of fact not shown in the evidence, yet such a question to an expert witness is not objectionable because it omits to hypothesize every fact in evidence. An examiner of an expert witness may lay, as a basis for the opinion invited, only those facts in evidence which conform to the theory he would establish. Of course, such questions must also incorporate sufficient of the facts in evidence to fairly justify the formation of an opinion on a material issue in the case. The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the discretion of the trial court. B. R. & E. Co. v. Butler, 135 Ala. 388, 395, 33 South. 33; Morrisett v. Wood, 123 Ala. 384, 26 South. 307, 82 Am. St. Rep. 127; Parrish's Case, 139 Ala. 16, 43, 36 South. 1012; Long Distance Co. v. Schmidt, 157 Ala. 391, 47 South. 731; B. R., L. & P. Co. v. Saxon, 179 Ala. 136, 59 South. 584; Jones on Ev. §§ 370, 371; 17 Cyc. pp. 244, 250.

[4] The application of these principles to the subjects of the 26 assignments first urged in the brief for appellant and, also, those numbered 9, 10, 11, and 12, requires the conclusion that the court committed no error in those particulars. In this connection, account should be taken of the assignments wherein complaint is made of a denial to plaintiff of the right to adduce opinions of informed witnesses favorable to the plaintiff's contention with respect to the relative duration of the fire in the defendant's warehouse and in the plaintiff's storehouse, and also the probability that the fire in the plaintiff's storehouse could have been controlled by the fire department if an explosion in the defendant's warehouse had not occurred.

[5] The eighth assignment might have pos-

[1] 199 Ala. 57.

sessed merit but for the fact that the witness, in response to subsequent examination by counsel for plaintiff, gave answers covering the subject of the question on the refusal of the court to allow plaintiff to propound which this assignment (8) is based.

[6] On the direct examination of the plaintiff's witness Lee Palmer, the plaintiff's counsel propounded these questions to the witness, both of which are made the subject of the thirteenth assignment:

"It is possible for this warehouse of Cranford's to have burned to the ground, it being something like 10 to 20 feet from the Hamilton building without the Hamilton building catching on fire, in your opinion? What is your best judgment as to that question, suppose you reach the building, say 25 minutes from the time Cranford Mercantile Company's warehouse caught on fire, as to the possibility of having saved Hamilton's building?"

The second question, quoted in the assignment, had already been answered by this witness, on his examination in chief by plaintiff's counsel, as appears from page 63 of the transcript, thus excluding the possibility of error in declining to permit the repetition of the second question would, if answered, have introduced. The assignment of error being joint, both of its subjects must be well taken else it cannot avail. Ashford v. Ashford, 136 Ala. 631, 641, 34 South. 10, 96 Am. St. Rep. 82; Jordan v. Rice, 165 Ala. 650, 51 South. 517.

[7] But aside from this, the first subject of complaint in this assignment made inquiry as to a mere possibility, as the result of circumstances specified in the question. If the question had been permitted and answered with the utmost favor to the plaintiff, it would have afforded nothing more than the statement of the witness that the thing was possible, a condition so uncertain of existence as to be valueless for the purpose of advising the court or jury in the premises. Assignment of error 13 is without merit.

[8] The two questions reproduced in and as the basis for assignment numbered 14 sought testimony from the witness Palmer that was substantially previously given by the witness, as appears from transcript, pages 63, 64. These rulings were not error to the prejudice of the plaintiff.

[9] Assignments 1 to 7, inclusive, and that numbered 79, are predicated of rulings of the court admitting testimony tending to show bias or prejudice on the part of the plaintiff's witnesses Creel and Sparks toward one of the persons who was an officer of, and owning an interest in, the defendant concern. The subjects of these inquiries were proper to be brought to the jury's attention for their bearing upon the matter of the credibility of these witnesses. Rivers' Case, 97 Ala. 72, 76, 12 South. 434.

[10] Assignments of error 18, 19, 20, 21, 24, and also those numbered 28 to 36, inclusive, seek review of rulings on the admission of evidence relating to the value of plaintiff's property that was destroyed. Since the verdict was against the plaintiff's right to recover at all, such rulings cannot be made the basis of reversal on this appeal. Walker v. Smith, T., 199 Ala. 514, 74 South. 451, 453, 454.

[11] However, evidence of statements elsewhere made by the plaintiff tending to reflect upon this testimony as to the value of this property was admissible for its bearing upon the credibility the jury should accord his testimony. The case of Purifoy v. Lamar, 112 Ala. 123, 20 South. 975, erroneously cited on appellant's brief as in 121 Ala. 130, is without relation to the subject of these assignments.

[12] The causes of complaint enumerated in assignments numbered 40, 42, 43, and 44, and 47 to 51, inclusive, are that the court admitted testimony disclosing the condition of the concrete basement walls when the basement was, some months subsequently, cleaned out and after the forces of nature and the elements had had their effect. The relevancy of this character of evidence could not be reasonably questioned. Whether the testimony thus introduced should have credit was a matter for the jury to decide, having regard to the circumstances giving rise to it and affecting its reliability. The evidence itself was manifestly pertinent and was properly admitted.

The matter sought by the question recited in the seventieth assignment of error was given by this witness, thus, of course, avoiding error in that particular.

[13] Whether dynamite had been kept by the defendant in this building two years before the occurrence in question took place was wholly immaterial to the issues; and hence the court committed no error in the particulars noted in assignments of error 71 and 72.

[14] The seventy-fourth assignment is without merit. The reference the witness made to the statement of her daughter but served the purpose of calling the witness' attention to the fire, and did not effect to introduce hearsay matter. The witness Mrs. Covin herself testified, in response to a question by counsel for plaintiff, that she saw the Hamilton building on fire, and that her daughter's statement did not alone afford the reason for her knowledge on that subject.

[15] As has been indicated, one of the more important contested issues of fact was the amount of dynamite, if any, in the warehouse of the defendant on the night of the fire in question. The witness Guttery testified that he was in charge of the hardware department of the defendant in 1915; that when he was there he did the buying of dynamite for defendant. He also testified in support of the defendant's theory that there was little or no dynamite stored in the defendant's warehouse on the occasion under inquiry. During the examination of this witness by the defendant he was permitted, over plaintiff's objection,

to state circumstances that the witness said caused him to know about the amount of dynamite in the warehouse and to recite the conversation that took place between Mr. Cranford and himself with regard to the ordering of dynamite shortly before the building in question was destroyed. The circumstance to which the witness testified as impressing upon his mind the fact above indicated was that he met the county wagon on a public road in Walker county coming after dynamite (the defendant being in the habit of furnishing to the country road workers the dynamite used in that service), and that the defendant had no dynamite with which to fill the order. These matters are made the subjects of assignments of error 75 and 76. It has been long since settled in this jurisdiction that as a general rule a witness cannot corroborate himself or fortify his testimony by proving his declaration and acts. Nichols v. Stewart, 20 Ala. 358; James v. State, 115 Ala. 83, 22 South. 565; Jones on Ev. 869, 870; Pope v. State, 168 Ala. 43, 44, 53 South. 292. It is apparent that the application of this rule of evidence to the matters complained of in these assignments of error requires the conclusion that the court erred in those particulars. It is impossible to affirm that the evidence indicated as from the witness Guttery was otherwise than highly prejudicial to a proper solution of the very material issues of fact involved in this feature of the case.

[16] In the brief for appellant assignments of error numbered 77, 78, 81, 82, 83, and 84 are referred to en bloc. There is very little, if any, argument in support of these contentions for error. According to the appellant the benefit of the doubt whether these assignments are sufficiently insisted upon to require their review, a consideration of them leads to the conclusion that they are each without merit. That numbered 77 had reference to the testimony of the defendant's witness Guttery wherein that witness was examined touching the presence of the plaintiff's witness Lovett in the warehouse before the occasion of the destruction of the plaintiff's property. The fact that the plaintiff had shown by Lovett that he was in defendant's warehouse for the purpose of getting cement authorized the defendant to show by its witness Guttery when Lovett was in the warehouse for the purpose of getting cement and when the witness sold cement to the witness Lovett. The subjects of the other assignments noted in this connection have been individually reviewed. Some of them are covered by considerations before stated in this opinion. None of them has merit.

[17] The excerpt from the oral charge of the court, reproduced in assignment numbered 85, was a deliverance in accordance with the doctrine of our cases of Rudder v. Koopman, 116 Ala. 332, 22 South. 601, 37 L. R. A. 489, and S. S. S. & I. Co. v. Prosch, 190 Ala. 290, 303, 67 South. 516.

[18] Since plaintiff's entire stock and fixtures were destroyed on the occasion in question, reversible error cannot be predicated of the failure of the instructions referred to in assignments numbered 89, 93, 95, and 96 to discriminate between a partial and total destruction of the property for which the plaintiff claims damages in this action. The paramount issue in the case was the liability of the defendant for the total loss suffered by the plaintiff in the destruction of the plaintiff's property. The criticism in appellant's brief of all of these charges, except that numbered 41, discloses that the fault the appellant conceives adheres in the charges was, under the issues and evidence, one of verbiage only.

[19] Charge 41, given at the instance of the defendant, appears to this court to be a correct statement of the law, under the pleadings and the evidence in this case. Undoubtedly, the burden of proof was upon the plaintiff to trace the destruction of his property to a proximate cause afforded by the negligent act or omission of the defendant.

[20] There was no affirmative error in instructing the jury that "the burden of proof in this case is not on the defendant to acquit itself of negligence." If the plaintiff conceived that this instruction was calculated to mislead the jury to conclude that the plaintiff still bore the burden of proof, notwithstanding the plaintiff had made out a prima facie case, the plaintiff should have requested an explanatory instruction to remove the possible misapprehension indicated.

[21, 22] This charge, numbered 18, was given at the instance of the defendant:

If from all the evidence in the case the jury are unable to say that they are reasonably satisfied what caused the destruction of plaintiff's goods, they must return a verdict in favor of the defendant."

The court might well have refused this instruction because of its incorrect form, in that it required a verdict in favor of the defendant; whereas on the hypothesis stated the correct conclusion was that the jury should not return a verdict in favor of the plaintiff, upon whom the burden of proof rested to establish to the reasonable satisfaction of the jury the cause of action stated in his several counts. This defect of form, while not to be commended, does not justify a reversal of the judgment because thereof. If the charge had avoided this criticism of its form, it was not affected with error.

[23] Charges 22 and 29, given at the request of the defendant, were predicated of theories of nonliability of the defendant which were supported by phases and tendencies of the evidence. There was no prejudicial error in giving either of these instructions, though the latter, 29, was subject to the criticism as to form just stated with reference to charge 18. This instruction, 29, was not phrased as well as it might have been to express the idea the draftsman intended the

Instruction should convey. Undoubtedly, if an explosion occurring in the basement of the plaintiff's building "caused" the burning off the plaintiff's goods, the plaintiff was not entitled to recover. The alternative to "caused," "proximately contributed," was not an accurate statement of an element of the hypothesis that would justify the conclusion based thereon. For this reason, charge 29, while not affirmatively bad, possessed the quality of misleading the jury. However, after a consideration of the entire oral charge of the court and of the special instructions given to the jury by the court, this court is of opinion that its quality to mislead did not have effect in the case.

For the errors indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur, except MAYFIELD J., not sitting.

### On Rehearing.

McCLELLAN, J.    [24] The order of reversal entered in this case was predicated of the matters assigned for error in assignments of error numbered 75 and 76. In the application for rehearing our attention is called to the fact that in the original brief filed for the appellant these assignments of error were not insisted upon. L. & N. R. R. Co. v. Holland, 173 Ala. 675, 693, et seq., 55 South. 1001; Dickens v. Dickens, 174 Ala. 345, 56 South. 809; Rosenau v. Powell, 184 Ala. 396, 63 South. 1020; W. U. Tel. Co. v. Emerson, 14 Ala. App. 247, 69 South. 335. The further fact that the matter of these assignments was, subsequent to the submission, urged in the supplemental brief did not operate to retract the waiver resulting from the failure of the appellant to insist upon these errors in the brief filed when the appeal was submitted. It, therefore, results that the consideration accorded the subject-matter of these assignments was illadvisedly bestowed, and that the decision thereupon was not invited or justified. The rehearing is granted, the judgment of reversal is set aside; and the cause is affirmed.

Affirmed. All the Justices concur.